THE CENTRAL BANK *vs.* THE EMPIRE STONE DRESSING COMPANY and SHELTON.

A manufacturing corporation is not authorized, by virtue of its general powers, to indorse, for the accommodation of another, paper in which it is not interested ; such a transaction not being within the scope of the business for which it was constituted, and in which alone it is empowered to act.

Nor can it empower any officer or agent to act for it, in indorsing such paper.

The secretary of a corporation has no power to indorse accommodation paper, under his general authority to indorse notes and bills "in the prosecution of its business."

But if a loan, although in form made to the president of a corporation, individually, who gives his own note for the amount, indorsed by the corporation, is in fact made to the corporation itself and for its benefit ; or if the lender is induced by the representations of the agent of the corporation, to believe that the transaction is with the corporation and for a purpose within the scope of its business, the corporation is liable upon its indorsement.

Central Bank *v.* Empire Stone Dressing Co.

The repeal of the act of the legislature, prohibiting the circulation of bank
notes of a denomination less than five dollars, repealed, also, the conse-
quences of the act in respect to contracts entered into while it was in force.

Contracts made while the prohibitory law was in force, whose consideration
was always morally good, as between the parties, are therefore now without
the legal impediment of being contrary to legally established public policy,
and are valid.

A foreign banking corporation is to be presumed to possess the power to enter
into a contract with a borrower, to keep its notes in circulation, by redeem-
ing them as they are from time to time offered for redemption.

APPEAL from a judgment rendered at a special term. The
complaint alleged that the plaintiff was " a corporation,
carrying on the business of banking in Middletown, Connec-
ticut, and was duly incorporated for that purpose by an act"
of the legislature of Connecticut. That the defendant Shelton
made his promissory note for $5127, dated New York, May
8th, 1854, at six months, payable to the order of the Empire
Stone Dressing Company, at, &c. ; and that thereupon the
said stone dressing company, a corporation organized for the
purpose of stone cutting, sawing and dressing, under the gen-
eral act of February 17, 1848, duly indorsed the same ; and
said note, before the maturity thereof, was, for value received,
delivered to the plaintiff. The note, when due, was duly de-
manded, &c., of which the said company had due notice. A
like claim on a like note for $6180.66, dated May 4, 1854, at
seven months. The answer admits the plaintiff to be a foreign
corporation, as alleged. It is then alleged that before May 4,
1854, the plaintiff made an unlawful contract with said Shel-
ton to advance him bank bills of the plaintiff under the de-
nomination of *five* dollars, with intent and for the purpose
of circulating the same in the state of New York ; and
pursuant thereto, &c. did advance to said Shelton within this
state such bills with intent, &c. Shelton agreed to and did
circulate the same within this state. That in consideration,
&c., and to secure the plaintiff, said two notes were made,
and which, being founded · on an illegal consideration, are
void. It is denied that the defendants indorsed, or author-

Central Bank *v.* Empire Stone Dressing Co.

ized the indorsement of, said notes. It is also denied that the stone dressing company ever held said notes, or that they were indorsed in the regular course of its business. The case was tried before Judge ROOSEVELT, at the New York circuit, in June, 1856. The indorsement was proved to be in the handwriting of George Sherman. The plaintiff proved that said Sherman was chosen secretary and treasurer of the company on the 6th of December, 1853. By the by-laws, the secretary was empowered to "make, draw, indorse and accept notes and bills of exchange" "in the prosecution of" the business of the company. Notice of non-payment, &c. was proved, and the plaintiff rested. Motion by the counsel of the company to dismiss the complaint, on the ground that it was not proved the notes were indorsed by Sherman in the prosecution of the business of the company, nor was he authorized to indorse them. Motion denied, and exception. Evidence was given of an agreement made in April, 1852, between Shelton, who was a resident of New York, and the bank, by which the latter agreed to supply him with bills of said bank, which were marked, to distinguish them from other bills, and which were to be circulated by Shelton in New York; and, when redeemed by the plaintiff, were to be sent to Shelton again for further use, and so from time to time Shelton providing funds to meet what was paid in redeeming the bills, &c. The bank was to be made secure by the note of Shelton, indorsed by the stone dressing company, and such a note of the date of said agreement (27th April, 1852) was given. This agreement was performed by the bank furnishing its bills, some over and some *under* five dollars; and which were used by Shelton, and when redeemed by the plaintiff were again sent to Shelton for further use. When the note first given fell due, it was renewed by a similar one. Thus the arrangement went on, the note in suit for $5127 being the last renewal of the series. The other note in suit for $6180.66 was given on such an arrangement, in all respects, except that there was included in it a balance due

from Shelton to the bank ($915) on other transactions. Shelton testified that Sherman indorsed the notes at his request. No part of the money was used for the stone company, but the arrangement was for the business of Shelton alone. Shelton was president of the company when the arrangements were first made, but not when the notes in suit were given. The defendants' counsel renewed the motion to dismiss the complaint, on the former ground, and on the ground that the legal capacity of the plaintiff to make such a contract as that which formed the consideration of the notes had not been proved, and could not be inferred as incident to the incorporation of the plaintiffs for banking purposes. Motion denied, and exception. The defendants' counsel requested the judge to charge—(1.) If the notes were indorsed without authority, or in a business, or for a purpose, foreign to that for which the company was incorporated, the defendants are not liable. (2.) If the indorsements were made merely for the benefit and accommodation of Shelton, the plaintiff cannot recover. (3.) The agreement between the plaintiff and Shelton for the circulation of notes in this state was illegal. (4.) If the plaintiff knew of Shelton's intention to circulate the bills under five dollars in this state, and did any act in furtherance of it, the notes given for the bills are void. The court refused, but charged, among other things, that although the circulation of the bills of banks out of the state, under five dollars, was once prohibited by statute, yet its repeal cancelled all penalties and forfeitures not yet exacted, and rendered null any defence which would operate as such penalty or forfeiture. It was immaterial therefore whether the agreement on which the defendants alleged the notes were given, was for the circulation in this state of bank bills under five dollars or not. The defendants' counsel excepted ; also to the refusal of the judge to charge as requested. The court charged that the secretary was authorized to " indorse notes in the prosecution of the business of the company," and if he abused that authority, the company would still be liable

if the paper was received *bona fide* and for value. That if a private debt of Shelton's to the plaintiff was included in the notes of Shelton, that would not render the notes void, but the amount might be deducted. To each of these points the defendant excepted. Verdict for the plaintiff. A motion was made to set the verdict aside, but it was denied by the special term, and judgment was given for the plaintiff.

*S. Beardsley* and *Charles F. Sanford,* for the appellants. I. The verdict was not only unsupported by, but was contrary to, the evidence.

II. The motion to dismiss the complaint should have been granted. Sherman, who made the indorsement in the name of the stone dressing company, was their secretary, and his only authority was to indorse in the name of the company, *in the prosecution of its business.* But this indorsement was not *in the prosecution of* any such business ; it was made for the accommodation of Shelton alone, as the plaintiff well knew. (1 *R. S.* 599. *Talmadge* v. *Pell,* 3 *Seld.* 328. *Bank of Genesee* v. *Patchin Bank,* 3 *Kern.* 314. *Alexander* v. *Mackenzie,* 6 *M., Gr. & Sc.* 766. *Nixon* v. *Palmer,* 4 *Seld.* 398. *Attwood* v. *Munnings,* 7 *B. & Cres.* 278. *Mechanics' Bank* v. *N. Y. and New Haven Rail Road Co.,* 3 *Kern.* 599.)

III. It was not proved that the plaintiff, a foreign banking corporation, had any *legal capacity* to make such a contract as that which formed the consideration of the notes in suit ; and that it had such capacity could not be inferred from the fact that it was a banking corporation. The court erred in refusing to dismiss the complaint on this ground. (*Phenix Bank* v. *Curtis,* 14 *Conn. Rep.* 437, 440. *Regulae Generales, Id.* 140. *N. H. Steamboat Co.* v. *Vanderbilt,* 16 *id.* 421. *Rules of Practice* 5, 18 *id.* 557. *Wolf* v. *Goddard,* 9 *Watts,* 555.)

IV. The judge erred in charging the jury that the repeal of the act, which prohibited the circulation of foreign bank bills *under five* dollars, after the contract between Shelton and the bank had been made, and the notes in suit given pursuant

to said contract, made said notes, although illegal before, perfectly legal then, and their former illegality could not be set up as a defense to an action on them. (*Laws of* 1830, *p.* 357, *act prohibiting foreign bills under* $5. *Laws of* 1855, *p.* 137, *repealing act, March* 27, 1855. *Hitchcock* v. *Way,* 6 *Adol. & El.* 948. *Jaynes* v. *Wilty,* 1 *H. Bl.* 65. *Dash* v. *Van Kleeck,* 7 *John.* 477. *Butler* v. *Palmer,* 1 *Hill,* 324. *Sayre* v. *Wisner,* 8 *Wend.* 661. *Bailey* v. *Mogg,* 4 *Denio,* 60. *Marsh* v. *Higgins,* 9 *M., Gr. & S.* 551. *Moore* v. *Durden,* 2 *Exc.* 22.)

V. The court erred in refusing to charge as requested; also in charging upon the points excepted to. (*Mechanics' Bank* v. *N. Y. & N. Haven R. R. Co.,* 3 *Kern.* 599. *Rose* v. *Truax,* 21 *Barb.* 361. *Burt* v. *Place,* 6 *Cowen,* 431. *Mackie* v. *Cairns,* 5 *id.* 548, 580. *Barton* v. *Port Jackson &c. Plank Road Co.,* 17 *Barb.* 397. *Bank of Genesee* v. *Patchin Bank,* cited above.)

*M. S. Bidwell,* for the plaintiffs. I. There was no error in the refusal of the judge to dismiss the complaint. There was evidence for the consideration of the jury. (1.) There was evidence from which the jury might find that the notes were indorsed by the authority of the appellants. Sherman was secretary and treasurer of the company, and had *prima facie* authority to indorse their name. Shelton was president of the company, and was the owner of a large plurality of stock, and he represented that the note was indorsed by the company, and that the bank bills obtained for it were to be disbursed in the regular business of the company. It was so stated in the agreement, which the appellants introduced in evidence. And it was so stated or assumed in other evidence, which the appellants also introduced. The name of the appellants had been used by Shelton in these or similar transactions with the respondents, with the knowledge of the trustees of the company, and without their objection. Shelton himself testified that such notes *were* made by the *company.* (2.) Shelton's

character for veracity was impeached; it was for the jury to pass upon his credibility. There was evidence, therefore, proper to be left to the jury. (3.) It is immaterial whether the *first* refusal to dismiss the complaint was right, if there was evidence for the jury at the conclusion of the testimony. (*Murray* v. *Judah,* 6 *Cowen,* 490. *Hart* v. *Rensselaer and Saratoga R. R. Co.,* 4 *Selden,* 42. *Grah. Pr.* 325.) The notes were valid, and constituted a cause of action upon which a suit was maintainable in this court. The validity of the notes depends upon the law of Connecticut, where the contract was made. The *lex loci contractus* applies to it. (2 *Kent's Com.* 454. *Pratt* v. *Adams,* 7 *Paige,* 632. *Peck* v. *Mayo,* 14 *Verm. R.* 33. *Depau* v. *Humphreys,* 20 *Mart. Louis. R.* 1. *Pomeroy* v. *Ainsworth,* 22 *Barb.* 123–129. *Chapman* v. *Robertson,* 6 *Paige,* 627.) The court cannot presume that any law existed in that state prohibiting such a contract; on the contrary, it is to be presumed that the common law is in force there. (*Thompson* v. *Ketchum,* 8 *John.* 193. *Pomeroy* v. *Ainsworth,* 22 *Barb.* 129. *Holmes* v. *Broughton,* 10 *Wend.* 78. *Shepherd* v. *Nabors,* 6 *Ala. R.* 631. *Titus* v. *Scantling,* 4 *Black. R.* 89. *Mali* v. *Roberts,* 3 *Esp. R.* 163. 2 *Cowen & Hill's Notes,* 1138.) The party affirming that there is such a law must prove it. As there was no such proof, it must be taken to have been a valid contract in Connecticut. The appellants are not subject to our law and are not supposed to have knowledge of our statute law, which, to them, is a foreign law : such laws are presumed not to be known to them until proved like any other facts. (*Brackett* v. *Norton,* 4 *Conn. R.* 520, 521. *Hempstead* v. *Reed,* 6 *id.* 480, 486. *Biggs* v. *Lawrence,* 3 *T. R.* 456, 457.) The maxim, *ignorantia legis non excusat,* does not apply ; but the co-relative maxim, *ignorantia facti excusat,* is applicable. The case is within the principle of decisions under the usury law, where a plaintiff, ignorant of the violation of that law, has been held entitled to recover. (*Holmes* v. *Williams,* 10 *Paige,* 326, 333. *Aldrich* v. *Rey-*

*nolds,* 1 *Barb. Ch. R.* 43. *Jackson* v. *Colden,* 4 *Cowen,* 266. *Ramsay* v. *Clark,* 4 *Humph. R.* 244. *Taylor* v. *Bunce,* 1 *Virg.* (*Gilm.*) *R.* 42. *Law* v.' *Sutherland,* 5 *Gratt. R.* 357, 360, 366. *Smith* v. *Beach,* 3 *Day's R.* 268. *Middletown Bank* v. *Jerome,* 18 *Conn. R.* 450. *Murray* v. *Harding,* 3 *Wils. R.* 395, 396. *Davison* v. *Franklyn,* 1 *B. & Ad. R.* 142.) The respondents had reason to believe it was not contrary to our law; the representations and conduct of the appellants' own confidential officers gave them good reason to believe so. The parties are not *in pari delicto.* The appellants are presumed to have known our law, and are therefore answerable for its transgression. (*Best on Prec.* 63 ; 31 *Law Lib. N. S.*) But this is not the case of the respondents. (*Skaiffe* v. *Jackson,* 3 *B. & C.* 421.) The appellants were bound to notify the respondents, otherwise they cannot avail themselves of the fact of such a law to defeat the action. Their silence is a waiver of their right to set up such a defense. (1 *Story's Eq. Jur.* §§ 385 *and* 439. 1 *Mad. Ch. Prac.* 262, 263. 1 *Fonb. Eq. Jur.* 388, 389. *Picard* v. *Sears,* 6 *Ad. & El.* 474. *Town* v. *Needham,* 3 *Paige,* 555.) 1 *Cowen & Hill's Notes,* 204. *Fanning* v. *Dunham,* 5 *John. Ch.* 145.) It would be contrary to public policy as well as to good morals to sustain such a defense ; it would encourage persons to lead others to violate the law ; it would encourage violations of our law. The legislature never intended that such an effect should be given to the law. (*Sanders* v. *Kentish,* 8 *T. R.* 165.) But if the respondents had resided here, and the contract had been made here, the defense could not have been sustained. The statute prohibiting the circulation of small bills of the banks of other states is not in force ; there is not any such statute. It did not, when it existed, declare securities given upon such contracts void. The repeal of the statute is a repudiation and condemnation of its policy. It must be considered as if it had *never* existed. (*Butler* v. *Palmer,* 1 *Hill's R.* 324. *James* v. *Dubois,* 1 *Harrison's New Jersey R.* 301.) All prosecu-

cutions pending under such a law, whether civil or criminal, fall the instant it is repealed, and cease, *ipso facto*, to be sustainable. (*Butler* v. *Palmer*, 1 *Hill's R.* 324. *Lewis* v. *Foster*, 1 *N. H. R.* 61.) By parity of reasoning, every defense depending upon such statute must fall, upon its repeal, and cease, *ipso facto*, to be sustainable. This will do no injustice. It will not deprive the appellants of any vested right. They had no vested right to set up a dishonest defense, any more than the inhabitants of Gad's Hill could set up a prescriptive right to commit robbery. (2 *Leon. R.* 12.) The contract was not void : the law recognizes the duty and obligation of the debtor in such cases to pay, although from considerations of public policy courts will not enforce such a contract directly by action. Even in cases of usury, when the contract is expressly declared to be void, our jurisprudence recognizes such an obligation on the part of the debtor. (*Fanning* v. *Dunham*, 5 *John. Ch.* 142, 146. *Rogers* v. *Rathbun*, 1 *id.* 367. *Murray* v. *Sands, Selden's Decisions of Court of Appeals, Oct.* 1853, *p.* 3, cited 17 *Barb.* 350. *Curtis* v. *Leavitt*, 17 *Barb.* 309. *Andrews* v. *Russell*, 7 *Black.* 474. *Hill* v. *Smith*, 1 *Morris' R.* 70.) *A fortiori* it will do so when the contract is not declared to be void. The respondents had capacity to make the contract and to take the note. The appellants are estopped to deny it. The appellants must pay for the property of the respondents, or restore it. There was no evidence of the respondents' want of capacity.

II. The exceptions to the charge of the judge cannot be sustained. (1.) As the appellants excepted to the *entire charge,* the exception must be overruled if *any part* of the charge was not erroneous. (*Haggart* v. *Morgan*, 1 *Seld.* 427, 428. *Caw* v. *Robertson, Id.* 125, 132. *Hunt* v. *Maybee*, 3 *id.* 273, 274. *Davenport* v. *Covert, Ct. of App. Oct.* 1852.) (2.) No part of it was erroneous. The part which will be objected to was a mere abstract proposition. If not regarded as a mere abstract proposition, but taken in connection with and applied

to the circumstances, it was not erroneous. The secretary had authority to indorse the name of the appellants. An *abuse* of such authority, and a *want* of authority, are different things. (*Bank* v. *Hammond*, 1 *Rich. Law R.* 1.) The company gave him the means of making the respondents believe that he had authority ; and if one of the parties must suffer, they, and not the respondents, should bear the loss. (*Gibson* v. *Pennington, Court of Appeals, April,* 1852. *McNaughton's Select Cases,* 118 ; 58 *Law Lib. N. S. Ship Fortitude,* 3 *Sum. R.* 252.) From all the circumstances, his authority to bind the appellants is fairly inferable.

III. The appellants have no equitable or meritorious claim for a new trial. The respondents ought in justice to be paid. The defense is merely technical at the best.

*By the Court,* PEABODY, J. In this case a note made by Shelton was indorsed by the defendant for his (Shelton's) accommodation. The indorsement was made by Sherman, the secretary of the defendant, of his own motion, and without authority other than his general authority, which was to indorse notes and bills " in the prosecution of its (defendant's) business."

The question arises, was this act of the secretary so far authorized as to bind the company as to third persons. No question was made on the argument of the authority of the company to indorse, under the circumstances; of which it would seem there might well be a reasonable doubt, not at all diminished by the recent case of *The Bank of Genesee* v. *The Patchin Bank,* (3 *Kernan,* 314.)

The power itself of the defendant to indorse this paper is not made the subject of a point on the argument, and needs not to be considered here, unless it be in determining the authority of the secretary to bind the company. His authority was supposed to depend on the terms of the resolution declaring the powers of the secretary. It must, however, in the nature of things, be subject to another limitation. It

must be restricted to the business which the company itself was authorized to do. Within the scope of the business which the company was authorized to do, he, as its agent, may be authorized to act for it, but beyond that he could not be authorized; for beyond that the company itself could not act, and of course could not authorize him to act for it.

In the case of *The Bank of Genesee* v. *The Patchin Bank,* (3 *Kernan,* 309,) it was decided that the defendant, by virtue of its general powers of banking, was not authorized to indorse, for the accommodation of another, paper in which it was not interested; because such a transaction was not within the scope of the business for which it was constituted and in which alone it was empowered to act. The business of the defendants was the dressing or manufacturing of stone, in which indorsing of negotiable paper for accommodation would seem at least to be no more necessary or legitimate than in that of banking; and I think that under the reasoning and decision in that case the defendant itself had not power to indorse in this case. Of course its agent could not be authorized, for as it had not the power it could not confer it on him. As a partner, whose power to bind the partnership within the scope of its business is unlimited, cannot bind it beyond the scope of such business, so, in this case, as the business of indorsing negotiable paper for accommodation was not, according to the case above referred to, within the scope of the purposes for which the defendant existed, it was not within its powers to do, and no agent of the defendant was or could be empowered to act for it in that business. If this transaction with the plaintiffs was with Shelton, and for his benefit, and the plaintiffs so understood, or had no reason to understand it to be otherwise, the defendant is not bound by this indorsement.

The notes in suit, however, had their origin in a transaction in 1852. That transaction was a loan by the plaintiff to Shelton of its bills for circulation in New York. Shelton was then president of the defendant, and as president had had at least one transaction of the same character, with the plaintiff

before, and the officers of the plaintiff knew of it, and knew that it was for the benefit of or "*with* the company." No other transactions between Shelton and the plaintiff are shown, and there is no reason to suppose that they had ever had any except the one testified to by Shelton, in which he, as the plaintiff knew, (although he dealt in his own name,) acted for and in behalf of the company. When this transaction occurred, as when the previous one did, he was president of the defendant. With this previous acquaintance and business intercourse, the transaction out of which the present suit grew, commenced on the 22d of April, 1852, by a letter from Shelton to the plaintiffs, stating to them that he was solicited to take some more money for circulation, but had declined, supposing that the plaintiff "might wish to furnish $5000 more on same terms as last, according to our (their) understanding." He proceeds : "Please inform me what your wishes are, (*and as your president stated your charter did not allow you to loan more to one firm*,) you can make the loan to me *individually*, and I *will give you the indorsement of the company.*

P. S. I wrote you yesterday about paying our orders for freight."

The answer to this bears date the next day, (April 23,) and proceeds : "Yours of 22d is before me. I wrote you yesterday in reply to yours of the 21st. We will make you a loan on the same terms as we made the other. *We prefer to make it to you personally, with Co.'s indorsement, to avoid all question about legality. Shall the bills be marked like the others ?*"

These two letters embrace the contract out of which these notes sprang; and they show it to have been a contract to repeat a previous transaction. The request is for a loan of "$5000 more on same terms as last *according to our understanding,*" and then proceeds to provide a mode of avoiding the limitation of the charter ; to do which he says : "You can make the loan (the new one) to *me individually*, and I

will give you the indorsement of the company." The answer, after alluding to a previous letter, which, so far as we are informed, must have related to the business of the company, consents to make the loan on the same terms as the other, and proceeds to suggest a single modification as to form : "We prefer to make it to you personally, with Co.'s indorsement, to avoid all question about legality." The letter of the bank is, to be sure, addressed to Shelton, who was not only president but was in fact the principal stockholder, and pretty much all of the company. They show, it seems to me, an intention to repeat a former transaction, with a variation only to suit the terms of the plaintiffs' charter, by making it to Shelton *in form*, rather than to the company for whom it is evidently understood by the plaintiffs that it was in fact made. It was made on the credit of the defendant, as the previous one was. Other matters with the company are treated of in the same letters, and in the same terms, showing that other business of the plaintiffs with the company was done with Shelton in the same manner as this. The plaintiff, in dealing with the defendant, was bound to see that the dealings were within the scope of the defendant's business ; and if it did use reasonable care and diligence to be informed on this subject and was misinformed by the defendant or its agents, the defendant is not discharged, even though the fact should be that the defendant was acting as it should not have done. From the correspondence above, which embodies the contract, in connection with the previous intercourse between the parties, for whom could the plaintiff have thought this loan was made? Is it not apparent that it was understood to be for the benefit of, and in fact made to the defendant, although in form it was made to Shelton on the security of the defendant? If otherwise, what means the arrangement in both the above letters to have it, for the sake of legality, in form with Shelton, rather than the company? If it had been understood to be with and for Shelton, why was there a thought of having

it in any other name than his, which alone has made this special provision on the subject necessary?

The plaintiffs had reason to suppose that this transaction was with and for the defendant, and if it had been, the defendant would have been liable on it. The company had authority to make such a transaction (to borrow money) for itself in the prosecution of its business, and if (as the plaintiff supposed) it had been so made, the indorsement of the secretary would have been clearly within the powers of the defendant and within his authority. On the ground then that the transaction was in fact with the defendants, or if not really so, that the plaintiff was misled by Shelton, the agent of the defendant, to the opinion that it was so, in effect at least the defendant is liable on this indorsement. For this also, the case of *The Genesee Bank* v. *The Patchin Bank,* above referred to for another purpose, is an authority.

The next objection is to the charge of the judge, that the repeal of the act prohibiting the circulation of bank bills of a denomination less than five dollars, repealed also the consequences of the act, as to contracts entered into while it was in force. This principle applies only to those acts of the legislature which are measures of public policy merely, not to those which are intended primarily to establish or affect the rights of parties as to each other. The legislature deeming it wise as a measure of public policy, to restrain the circulation of notes of denominations less than $5, made the act unlawful, and prohibited it, under the consequence, among others, of refusing enforcement of any contract based on such consideration. That law had its day, and was repealed when a change in the wants of society or new light as to its real interests arose. By that repeal the law is decided to be unwise for the present at least, and the contracts made under it, whose consideration was always morally good as between the parties, are now without the legal impediment of being contrary to legally established public policy, (contraband of law,) and are valid. This principle is understood to be fully estab-

Central Bank *v.* Empire Stone Dressing Co.

lished in the celebrated case of *Curtis* v. *Leavitt, rec'r,* and *Leavitt, rec'r,* v. *Blatchford,* growing out of certain transactions of the North American Trust and Banking Co. (1 *Smith,* 9.) In those cases usury was insisted on as a defense to some claims against the company, and pending the litigation, a law was passed forbidding the interposition of that defense by a corporation. It was passed long after the occurrence of the transactions, and after the defense had been pleaded ; but the supreme court in this district held that it deprived the company of the defense, even as to the transactions which were entered into while the law utterly invalidating contracts for usury was in force, and available to corporations as well as natural persons. This decision has been affirmed by the court of appeals, and is now the settled law of this state. The charge in this respect, therefore, was correct.

Another objection to the recovery was that it was not shown that the plaintiff, a foreign corporation, was authorized to enter into a contract with the borrower to keep its notes in circulation, by redeeming them as they were offered for redemption, from time to time. It appeared, however, that the plaintiff was a banking corporation, and such a contract is within the scope of any banking business of which we have any knowledge. A bank is bound to redeem or pay its notes when called on for the purpose. It may surely make a contract with a third person, and (whether he be a borrower or not, is unimportant,) to do it, or furnish funds for the purpose. It would not be easy to imagine a corporation lacking the powers to contract with third persons to furnish it funds with which to pay its debts, or to redeem its obligations ; and especially one whose chief end and most legitimate business was the issuing and procuring credit and circulation for its obligations. This was a contract by the plaintiffs to loan its notes, which is surely not illegal, and added to that, a contract by the defendants or Shelton (as the case may be) to re-

Central Bank *v.* Empire Stone Dressing Co.

deem them, which is almost as surely not contrary to law, and is within the power of a bank.

The judge was asked to charge the jury, (1.) That if the notes were indorsed by the secretary without authority, or for a purpose foreign to that for which the defendant was incorporated, the defendant was not liable; and (2.) That if the indorsements were made for the benefit of Shelton, the defendant was not liable ; which he refused. Those requests were not either of them entirely correct, and neither could properly have been complied with literally. Each, however, was proper, with some qualification. To the first should have been added the qualification, " unless the plaintiff was misled by the defendant or its agents, to the opinion that they were made for a purpose within the scope of the business for which the defendant was created, and within which it was authorized to act ;" and to the second should have been added the qualification, " if the *plaintiff knew* that they were made for Shelton." The case is relieved, however, of the question suggested here by the subsequent charge at fol. 166, where he did charge as nearly according to the request as was proper, "that if the notes were indorsed for Shelton's private benefit and accommodation, and not for the uses of the company, and the plaintiff had notice that they were so indorsed, then the plaintiffs could not recover." This disposes of all the objections made by the defendant, and leaves the judgment to be affirmed.

Judgment affirmed.

[New York General Term, November 2, 1857. *Mitchell, Roosevelt* and *Peabody,* Justices.]