## FARMERS' AND MECHANICS' BANK *a.* THE EMPIRE STONE DRESSING COMPANY.

*New York Superior Court ; General Term, October*, 1859.

REFEREE'S FINDING.—CORPORATION.—BILLS, NOTES, AND CHECKS.

The by-law of a corporation, authorizing its officers "to accept bills of exchange in the prosecution of the business of the company," is no authority for making an accommodation acceptance.

A finding in the report of a referee, that the defendants, a corporation, "duly accepted" a bill, is to be construed as importing that their officer who signed the acceptance had authority so to do.

One who purchases a note or bill, drawn, indorsed, or accepted by a manufacturing corporation, cannot, without inquiry into their authority to make, or the authority of their officer or agent to bind them by, such a contract, rely on the mere fact of the drawing, indorsing, or accepting, and claim to be regarded as a *bona-fide* holder for value, without any reference to the question of actual consideration, or to that of the authority of the officer or agent.

One who discounts a bill for value and without notice, before acceptance, though he becomes thereby a *bona-fide* holder as against the drawer, does not thereby become a *bona-fide* holder for value as against the subsequent acceptor.

Discounting a bill in the expectation that it will be accepted as previous similar bills had been, is not discounting it on the faith of an acceptance.

A corporation whose agent without authority accepts a bill on them, which it was not competent for them to accept, are not rendered liable by the fact that the holder of the bill relying upon the acceptance, held the bill till maturity, instead of suing the drawers for non-acceptance.

Appeal from judgment on the report of a referee.

The facts of the case found by the referee were thus stated in his report.

The plaintiffs were a corporation duly created by the Legislature of the State of Connecticut, in 1833, and they transacted their business at Hartford, in that State. The defendants were a corporation organized under the General Manufacturing Law of the State of New York, passed in 1848.

Between the 5th day of April, 1854, and the 7th day of May, 1854, the defendants duly accepted a certain bill of exchange

for $2000, drawn by the Hartford County Quarry Company, upon the defendants, dated on said 5th day of April, and payable to the order of Charles T. Shelton, in sixty days after the date thereof. The same was discounted at legal rates, on or about its date, by the plaintiffs, for and at the request of the drawers thereof.

Through an oversight this bill was not indorsed by the payee thereof until after maturity and protest thereof for non-payment.

Between the 19th day of May, 1854, and the 21st day of June, 1854, the defendants duly accepted a certain other bill of exchange for $500, drawn by the Hartford County Quarry Company upon the defendants, dated on the said 19th day of May, and payable to the order of Clark R. Shelton, in thirty days from the date thereof. The same was, on the day of its date, indorsed to the plaintiffs, who discounted the same at legal rates, for and at the request of the drawers thereof.

Neither of these acceptances was made in the prosecution of the business of the defendants, but solely for the accommodation of the drawers thereof, and the defendants never received any consideration for such acceptances, but the plaintiffs had no actual notice thereof.

There was a payment made to said plaintiffs, on account of the indebtedness arising upon said acceptances, of $500, on the 12th day of October, 1855, the balance due on the said acceptances being still due and unpaid.

The referee therefore found, as a conclusion of law, that the defendants were indebted to the plaintiffs in the balance of said indebtedness, with interest.

From judgment entered for the plaintiffs on this report the defendants appealed.

*Charles F. Sanford,* for the appellants.—I. The defendants never accepted either of the drafts, and can be charged with no liability upon either, except in the hands of a *bona-fide* indorsee, for value, before maturity. 1. The *act* of Sherman in accepting these drafts, was not within the scope of the authority conferred upon him by the by-law. Special or limited powers are to be construed strictly; *e. g.* a power to make notes in the prosecution of a mechanical business cannot be construed as a

power to make notes for the accommodation of third parties. (Warren *a.* Tysen, 3 *Hill*, 279.) The act of Sherman, therefore, under consideration, was not only in excess of the authority conferred upon him by the by-law, but, as it involved a wilful violation of duty, amounted, if not to forgery, at least to heinous fraud. 2. If the delegated power had contained no express limitation, the *act* would have been a nullity, for the defendants themselves *could not* under their charter (*i. e.* the General Manufacturing Law and their certificate of incorporation), issue accommodation paper, for the purpose of enabling third parties to raise money thereon. (2 *Rev. Stats.*, 596 ; *Ib.*, 657, 5th ed. ; Talmadge *a.* Pell, 3 *Seld.*, 328 ; Bank of Genesee *a.* Patchin Bank, 3 *Kern.*, 314.) 3. The attempted exercise of such a power is a violation of the restraining act. (Attorney-general *a.* Life and Fire Insurance Company, 9 *Paige*, 470 ; Schermerhorn *a.* Talman, 4 *Kern.*, 140.) 4. Those who deal with an agent, acting under special powers, are chargeable with knowledge both as to the nature and extent of the limitations prescribed. (Atwood *a.* Mannings, 7 *B. & C.*, 278 ; Talmadge *a.* Pell, 3 *Seld.*, 328 ; Warren *a.* Tysen, 3 *Hill*, 279 ; Nixon *a.* Palmer, 4 *Seld.*, 398 ; Alexander *a.* Mackenzie, 6 *M. Gr. & S.*, 766 ; Mechanics' Bank *a.* New York and New Haven Railroad, 3 *Kern.*, 622.) 5. *A fortiori*, if a corporation, the mere creature of legislation, transcends corporate powers, the dealer must be charged with notice, since, in such case, the limitations to its authority are not only defined in writing, but are matter of public law and public record. (Bank of Genesee *a.* Patchin Bank; Mechanics' Bank *a.* New York and New Haven Railroad, cited above.) 6. The case of the Farmers' and Mechanics' Bank against the Butchers' and Drovers' Bank (16 *N. Y.*, 125), so far as it controverts these positions, is applicable solely to negotiable commercial paper, in the hands of *bona-fide* indorsees for value, before maturity.

II. But the $2000 draft was not, at the time of its transfer, nor at any time during its life, a negotiable instrument. It was not indorsed by the payee till long after its maturity. 1. Prior to the Code, the transfer of a bill payable to order was only properly made by indorsement. In no other way could the transfer convey the legal title, so as to enable the holder to recover at law. (*Story on Bills*, § 201 ; Gibson *a.* Minet, 1 *H. Bl.*, 605 ;

2 *Story Eq.*, §§ 1036–7, 1044–7.) 2. In case of an assignment without indorsement, the holder acquired only the rights which he would have acquired upon the assignment of a bill not negotiable. (*Story on Bills*, § 201 ; 2 *Story Eq.*, § 1047 ; Murray *a.* Lylburn, 2 *Johns. Ch.*, 441 ; 2 *Vern.*, 692 ; 1 *Ves.*, 123.) 3. In such case the holder, having an equitable interest, might sue in the name of the person having the legal title. (Pearse *a.* Hirsh, 10 *B. & C.*, 122 ; *Chitty on Bills*, 536.) 4. The Code has changed the law in this respect, so far as to permit the assignee to maintain the action in his own name, but as regards equitable defences the law remains the same. (Hastings *a.* McKinley, 1 *Smith*, 273 ; *Code*, §§ 111, 112.) 5. The holder may, in certain instances, compel a payee who transfers a bill, without indorsing it, to indorse. (*Story on Bills*, § 201.) 6. But the object of such compulsory indorsement is to change the assignor as indorser ; not to give the holder, as against prior parties, any rights which the assignor, at the time of such compulsory indorsement, did not himself possess. (*Chitty on Bills*, 244, 246.) 7. An *intended* indorsee, when a bill has, *by neglect*, been transferred to him without indorsement, might, formerly, sue in the name of the payee. (*Ib.*, 536 ; Pearse *a.* Hirsh, cited above ; 5 *Man. & Ryl.*, 88.) 8. Now under the Code, as already suggested, he may sue in his own name, but, obviously, subject to all existing equities ; since, on general equitable principles, if a party, by his own neglect (and in the absence of fraud), has failed to acquire legal but not equitable rights, which, but for such neglect, he could have secured, no court of equity will interfere to vest him with those rights, because, in so doing, it must impose corresponding liabilities, which are not equitable, but strictly legal, and from which that neglect has occasioned exemption. Thus, if the holder of a bill, by his negligence or mistake, fails to give due notice to an indorser, no court of equity will interfere to enforce his remedy; or if he lose his right against a surety, by failing to proceed against the principal, he will not be entitled, in equity, to any relief. So, in the case of an intended indorsement by a payee, the court, while it compels the indorsement, so as to give a right of action against the payee as indorser, thus enforcing a purely equitable right, will never interfere to exclude equitable defences, but will leave the party to the just consequences of his

negligence. (Franklin Bank a. Raymond, 3 *Wend.*, 69 ; 13 *Mass.*, 305.) 9. A voluntary indorsement, after maturity, is only equivalent to an assignment, and is made subject to all equities between the original parties. (Williams a. Matthews, 3 *Cow.*, 252.) 10. As between the original parties, the want of consideration is a good defence. (People a. Howell, 4 *Johns.*, 296 ; Pearson a. Pearson, 7 *Ib.*, 26 ; Schoonmaker a. Koosa, 17 *Ib.*, 301 ; Slade a. Halstead, 7 *Cow.*, 322 ; Bank of Troy a. Topping, 9 *Wend.*, 373 ; Franklin Bank a. Richmond, cited above.)

III. The acceptance of the $500 draft is not, and does not on its face purport to be the act of the defendant. In this respect, it differs from the other which is accepted in the defendant's name. Upon this draft, George Sherman is the acceptor, and he alone is liable as such. The word " Secy." appended to his signature is merely *descriptio personæ*. (Hills a. Bannister, 8 *Cow.*, 31 ; Taft a. Brewster, 9 *Johns.*, 334 ; Stackpole a. Arnold, 11 *Mass.*, 27 ; Pentz a. Stanton, 10 *Wend.*, 271 ; Barker a. Mechanics' Fire Insurance Company, 3 *Ib.*, 94; Moss a. Livingston, 4 *Coms.*, 208 ; DeWitt a. Walton, 5 *Seld.*, 371 ; Bolles a. Walton, 2 *E. D. Smith*, 164.)

IV. The plaintiffs are not *bona-fide* indorsees for value of either acceptance. 1. The defendant having shown that neither the Quarry Company, nor Shelton could have recovered upon the drafts, for the reasons above urged, the burden of proof was thrown upon the plaintiffs to show that they parted with value, in the regular course of business, before the maturity of the drafts, and on the faith of the acceptances. A mere credit to the drawer on the books of the bank of the proceeds of the discount is not parting with value; and in the entire absence of any personal knowledge on the part of the cashier, as to such proceeds having been drawn, the plaintiffs have failed to sustain their title as *bona-fide* holders for value. 2. Again, the drafts were respectively discounted on or about the day of their date, and were subsequently forwarded to New York for acceptance. The plaintiffs therefore, if they parted with value at all, did so on the faith of the drawer's responsibility, not on that of the acceptor's.

*William E. Curtis*, for the respondents.—I. The acceptances were not accommodation. The failure of the defendants to pro-

duce and show the general account between the companies where these drafts are charged, and the character of their transactions appears, establish the presumption that the acceptances were made in their ordinary course of dealings, either as payments or advances for stone quarried and delivered, or to be quarried or delivered. The act of Sherman in accepting these drafts was within the scope of his authority, as represented and recognized by the defendants in their dealings with third parties, and as established by by-laws. (The United States *a.* City Bank of Columbus, 19 *How.* (*U. S.*) *R.*, 385.)

II. If, for the purposes of the argument, it is conceded that defendants' secretary exceeded his authority, and that the drafts were accommodation drafts, the plaintiffs, having discounted the same in the ordinary course of business before maturity, and without notice, come within the rule, that as between two innocent parties thus situated, the principals in whose name the drafts were accepted, rather than the holder of the drafts, should suffer for their misplaced confidence.

The same principle applies to the acts of the officers of a corporation as to a partner of a mercantile firm who affixes the firm-name to a paper in which the firm has no interest. Where such paper is negotiable, and passes to an innocent holder for a valuable consideration, the corporation is bound; and doubly so, when by their conduct they have also induced the party to take it. (The Bank of Genesee *a.* The Patchin Bank, 3 *Kern.*, 315–317; Attorney-general *a.* Life and Fire Ins. Co., 9 *Paige,* 470; Belmont *a.* Coleman, 1 *Bosw.*, 195; Hovey *a.* A. M. Life Ins. Co., 11 *Paige,* 635; Mechanics' Bank *a.* N. Y. & New Haven R. R., 3 *Kern.*, 622, 626; Farmers' and Mechanics' Bank *a.* Butchers' and Drovers' Bank, 16 *N. Y. R.*, 125; Exchange Bank *a.* Monteith, 17 *Barb.*, 171; De Zeng *a.* Fyfe, 1 *Bosw.*, 336.)

III. The plaintiffs do not hold the two thousand dollar draft subject to the equities affecting it in the hands of the indorser, by reason of his omitting to indorse it at the time of the transfer.

The subsequent indorsement has relation back to the time of the delivery of the bill, and was sufficient to give effect to the antecedent right that vested at the times when the consideration was paid. (*Chitty on Bills,* 8 Am. ed., 263; *Story on Bills,*

§ 201; Watkins *a.* Maule, 2 *Jac. & Walk. R.*, 244; Renfield *a.* Morgan, 12 *Johns.*, 346; Prescott *a.* Hall, 17 *Ib.*, 284.)

By the Court.*—Woodruff, J.—The defendants are a corporation, organized under the general manufacturing law of this State, passed in 1848. (*Sess. Laws of* 1848, ch. 40, 54.)

They are sued upon two bills of exchange, drawn upon them by the Hartford Quarry Company, and which were, in terms, accepted by the defendants' secretary.

It is expressly found by the referee, that " neither of the said acceptances was made in the prosecution of the business of the defendants, but solely for the accommodation of the drawers, and that the defendants never received any consideration for such acceptances."

This finding is in clear conformity to the weight of the evidence. The secretary of the defendants, by whom the acceptance was written, and whose duty it was to keep their books and accounts, testifies that, so far as he knows, there was no consideration for the acceptance; that it was his impression at the time, that the acceptances were made for the accommodation of the drawers solely; that no consideration passed from any one to him, or to the defendants, so far as he knows; that although he cannot testify that he knows, of his own knowledge, that they were without consideration, and accepted for the accommodation of the Hartford Quarry Company, that is his impression and belief; and, it having been suggested that the defendants had accepted drafts in payment for stone shipped to them by the Quarry Company—and this being indeed the only consideration which it was claimed by the plaintiffs the defendants had received—the secretary testifies, of his own knowledge, that " they were not made for stone."

The president of the defendants, who told the secretary to accept the bills, testifies, in explicit terms, that they were accepted for the accommodation of the Quarry Company.

The treasurer of the defendants testifies that, at a date prior to the date of these bills, he was chosen treasurer, and from that time until long after the maturity of the bills he had the sole management of the financial affairs of the defendants, and that

* Present, Hoffman, Woodruff, and Pierrepont, JJ.

he did not as treasurer, or in any way, receive any considera-
tion for the acceptances, and that the company did not, to his
knowledge.

There is no testimony in contradiction of this evidence. The
only testimony which in any degree tends to show consideration,
is that of Julius H. Pratt, a director of the Quarry Company,
and a trustee of the defendants. He knows the general fact that
the Quarry Company sent stone to the defendants, but his testi-
mony is chiefly hearsay. He says, in terms, he does not know
what was the consideration of these acceptances. He says he
did not know what was the state of the accounts between the two
companies in the spring of 1854, and he adds that he does "not
think anybody did."

The finding of the referee on this point is, therefore, in ac-
cordance with the proofs. The acceptances were without con-
sideration, and for the accommodation of the Hartford Quarry
Company.

The secretary of the defendants had no authority to accept for
the accommodation of third parties. The by-laws authorized him
"to accept bills of exchange in the prosecution of the business
of the company." That business was, "the business of cutting,
sawing, and dressing stone of all kinds, and the business of stone-
cutting in all its branches."

It may, perhaps, be conceded that the certificate of incorpo-
ration, under the clause last quoted, would authorize the pur-
chase of stone to be cut or dressed, and then that the by-law
would authorize the secretary to accept bills in payment for
stone purchased. But no latitude of construction would extend
the authority conferred, in the language above cited, so as to
include an authority to accept for accommodation merely, and
without any consideration.

The president told him to accept the bills, but the evidence
fails to show that either he or the president, or both, had any
authority to bind the defendants by such an acceptance.

If the report of the referee, that "the defendants duly accept-
ed the bills," is to be taken as importing that the secretary had
authority to accept accommodation bills, then his report is, in
this respect, against the weight of the evidence, and the judg-
ment should be reversed on that ground, unless we can now hold,
upon the other facts, that the defendants are liable, whether the

secretary was authorized to accept such bills or not, and alike liable in either case.

If the report is not to be taken to find such authority, then there is no finding on the point, and a new trial should be granted, because enough is not found to sustain the judgment, unless, as before, we are prepared to say that the question whether he had authority or not is immaterial, and the defendants are liable, although the secretary was not authorized to accept these bills.

This, I apprehend, cannot be correctly held. On the contrary, the right of the plaintiffs, in my judgment, depends primarily upon the question whether the secretary of the defendants had authority to accept bills for the accommodation of a third party. If he had, then the plaintiffs are doubtless entitled to recover; and when this case was before the general term, in January, 1858, there was an express finding by the referee, that the secretary of the defendants was " duly authorized" to accept these bills. If that were true as matter of fact, the cases which hold that an accommodation acceptor, whose acceptance is given without restriction as to its use, and especially where it is given for the very purpose of securing a third party, is bound thereby, would apply to this case.

It is, however, obvious that a finding that the secretary was " duly" authorized to accept accommodation bills, involves the legal proposition that the secretary of a manufacturing corporation may be duly authorized to accept accommodation paper, that the corporation have legal power to make such an acceptance, and that all things had been done which are requisite to confer such legal authority on the secretary.

Although it may be true that a corporation, having authority to accept for the purposes of its business, may exceed their legitimate power, and so accept, that—as against a third person relying on the representations of its agents, or advancing money on the faith of the acceptance—it will not be permitted to allege the true character of the acceptance to defeat a recovery; still it is, we think, quite clear that neither the secretary of a manufacturing corporation, nor any or all of its officers, have, as matter of law, any legal authority so to accept; and that in this case, under the charter, or the general principles applicable to the subject, the secretary of the defendants had no such authority; and if not, then the question will arise, whether he was clothed with

such authority to accept, for the purposes of the company, that a third person had a right to rely upon his act of acceptance without further inquiry, and by advancing money or giving credit on the faith thereof, without notice that the bill was an accommodation bill, would become entitled to hold the company, notwithstanding the secretary had no legal authority from the defendants to accept accommodation bills? And if this last question be answered affirmatively, then, are these plaintiffs *bona-fide* holders, without notice that the bills in question were accommodation bills, who have given value, therefore, upon the credit of the acceptance, and in reliance upon the apparent authority of the secretary?

I. Upon the first question the evidence is clear, and it has already been sufficiently noticed. The by-laws, under which alone the secretary had actual authority to accept any bills, confined such authority to the prosecution of the business of the company. There was no evidence that the powers of the secretary had been enlarged by any other means. Although the secretary states that it is his impression that he had previously made accommodation acceptances for the drawers of these bills, he also states that they were paid, as he supposes, by the drawers, and not by the defendants; and if a previous practice of giving out such acceptances would bind the company to a person who received them for value without notice, it is not shown that the trustees of this company ever sanctioned any such practice.

The referee finds that the present acceptances were not made in the prosecution of the business of the defendants. It must be adjudged, I think, that they were made by the secretary without authority.

II. Would these acceptances by the secretary bind the company in favor of a *bona-fide* holder of the bills for value paid upon the faith of the acceptances, and in reliance upon any apparent authority of such secretary to bind the defendants?

In The Bank of Genesee a. The Patchin Bank (3 *Kern.*, 309), the action was against the defendants as indorsers of a bill of exchange, discounted by the plaintiffs, and it appeared on the trial that the indorsement was by the cashier of the defendants, for the accommodation of a third party (a railroad company), and that the defendants had no interest in the bill which was so

indorsed. It, however, appeared that in that case the proceeds of the discounted bill were sent by the plaintiffs to the defendants' cashier, from whom the bill was received for discount.

The Court of Appeals unanimously held that a charge to the jury, that " if the cashier had special authority from the Patchin Bank, or from the manager of the bank, to indorse the draft in question, the bank was bound by it although it was an accommodation indorsement for the railroad company, and the bill was made to raise money for it," was erroneous, and the judgment below was reversed for that error.

Mr. Justice Denio expressed the opinion, that had the charge annexed a further condition that " the plaintiff had received and discounted the bill, under a representation of the defendant that it was the owner of the bill, and that it was to be discounted for the defendant's benefit," the charge would have been correct, but the other judges declined passing upon that question.

That case, therefore, leaves it quite doubtful at least whether any or all of the agents of a corporation can bind such corporation, whose business is limited to the purposes of banking or of manufacturing, by an accommodation indorsement or acceptance made for purposes not within the scope of that business.

It is requiring very little of one who deals with a corporation having limited powers, to inquire whether the acts upon which he relies are within the scope of those powers; and I cannot think that a manufacturing corporation has such an unqualified authority to make promissory notes, or draw, indorse, or accept bills of exchange, that a third party may, without inquiry, rely upon their drawing, indorsement, or acceptance, and claim to be regarded as a *bona-fide* holder for value, protected against any inquiry into the consideration thereof, or into the actual authority of the officer or agent, or whether in truth the note or bill is issued for the proper purposes of the corporation. (Central Bank a. Empire Stone Dressing Co., 26 *Barb.*, 23.)

I do not think it necessary to pursue this question, for if the plaintiffs are not *bona-fide* holders for value paid in reliance upon the defendants' acceptance, and in faith that the secretary had authority to accept, then upon the case cited it is certain they are not entitled to recover. On the subsequent trial of the case of The Bank of Genesee a. The Patchin Bank, and on a second review thereof in the Court of Appeals, it was held, as

we are informed, that the discount of the bill by the plaintiffs, on the application of the defendants' cashier, and the sending of the proceeds of the discount to the defendants, upon the representation that the defendants desired the discount for their own benefit, or in substance to that effect, and without any notice that the discount was for the benefit of a third party, made the plaintiffs *bona-fide* holders for value entitled to recover. That having a general power to procure notes held by them discounted, and to indorse them for that purpose, the defendants would not—after having made application therefor, obtained the discount, and received the money—be permitted to allege, as a defence, that in truth the discount was procured for another.

III. In regard to the claim of the plaintiffs to be *bona-fide* holders for value, it should be borne in mind, that to entitle one to enforce an indorsement or acceptance (which is otherwise invalid), on the ground that he is a *bona-fide* holder for value, it must appear that he parted with value upon the faith of such indorsement or acceptance. He may be a *bona-fide* holder of the bill for value paid therefor, and be entitled to enforce it against every other party thereto, and yet have no right to recover on such indorsement or acceptance.

This distinction is applicable to the present case, and defines the plaintiffs' relation to the bills here in question. They are *bona-fide* holders of the bills for value paid therefor to the drawers; and as to such drawers, they have a plain right to recover from them the full amount.

But they have paid nothing in reliance on the defendants' acceptance. The bills were discounted before they were accepted, and upon such discount the proceeds were placed to the credit of the drawers, and made subject to their checks, and the bills themselves became the property of the plaintiffs, and at that time there was no acceptance upon which the plaintiffs did or could rely. They were, therefore, not discounted upon the faith of the acceptances at all.

At the moment when the defendants' secretary accepted the bills, they were the plaintiffs' property, and they were the immediate parties to the contract which, without consideration and without authority, the secretary assumed to make.

The plaintiffs, no doubt, discounted the bills with an expecta-

tion that they would be accepted, but they can in no just sense be said to have discounted the bills in reliance upon an acceptance which had not then been made.

They may have been induced to believe that the bills would be accepted, by the fact that they had held similar drafts which were accepted, and may have had the assurance of the drawer that they would be accepted. But relying upon their previous experience, or relying upon such an assurance, is by no means discounting the bills on the faith of the acceptances.

It is not shown that any one, who had authority from the defendants, gave them an assurance that the bills would be accepted; and if it had been shown that Charles T. Shelton, the defendants' president, had given the plaintiffs an unconditional promise that the bills should be accepted, the defendants would not have been bound—not merely because he had no authority to bind the defendants by such a promise, but especially because, by our statute, an acceptance must be in writing before it becomes binding as an acceptance, and an unconditional promise to accept must also be in writing, in order to bind the drawer of a bill. (1 *Rev. Stats.*, 768, §§ 6–8.)

It is suggested that the plaintiffs would have caused the bills to be protested for non-acceptance; and have had immediate recourse to the drawers if the defendants' secretary had not written an acceptance on the bills; and that, relying on the acts of the secretary, they have omitted such protest, and have waited until the bills became due before proceeding against the drawers, and that this delay is equivalent to discounting the bills, or paying value in reliance on the acceptance. This claim is as ingenious as I think it is novel.

If any fraud was practised on the plaintiffs to lull them into an unwarranted security, they may have recourse to the individuals who practised such fraud. But the defendants are not to be held by the unauthorized act of their secretary, merely because the plaintiffs, but for such act would have sought earlier redress.

As above suggested the plaintiffs had already become the holders of the bills, and when the alleged acceptance was written, it was an act to which the plaintiffs were direct and immediate parties. They were not bound to take an unauthorized acceptance—and they should have seen to it that the acceptance

if given was authorized, and was an act to which the agent of the defendants could bind them.

It is proper to observe that when the case was before the general term of the court on a former occasion, there was not only a finding that the secretary had actual authority to accept the bills, but much stress was also placed upon the want of clear proof, that these bills were in truth accommodation bills for which the defendants had received no consideration, and also on the circumstance that the accounts between the drawers and the defendants were not produced.

On the present trial it was proved, without objection, that in proceedings in insolvency relating to the settlement of the affairs of the drawers of the bills, it was found that the drawers were indebted to the defendants. This may perhaps be deemed to strengthen the other proofs, already adverted to, that the bills were accommodation bills. At all events, the finding of the referee on that point cannot be disregarded, or be deemed against the evidence, when as it now appears it is so fully sustained.

The judgment should, I think, be reversed, and a new trial ordered. Costs to abide the event.