On December 31st, the report of the referee having been prepared, but not having been filed with the clerk, nor delivered to the attorney of either of the parties, plaintiff's attorney served a notice upon the attorney for the adverse party that he elected to end the reference, on the ground that the referee had delayed filing his report or delivering the same to one of the attorneys within 60 days from the time that the cause was finally submitted to him for determination. Defendant's attorney took up the report not later than January 1, 1907, less than 60 days after plaintiff submitted his requests to find.

Plaintiff's attorney is not in a position to maintain that the case was finally submitted to the referee by him prior to the date when he submitted his request to find, which was not earlier than November 2, 1906, and he could not avail himself of the privilege of terminating the reference, under the provisions of section 1019 of the Code of Civil Procedure, within 60 days from that date.

Section 1023 of the Code of Civil Procedure provides:

"Before the cause is finally submitted to the court or the referee, or within such time afterwards, and before the decision or report is rendered, as the court or referee allows, the attorney for either party may submit, in writing, a statement of the facts which he deems established by the evidence, and of the rulings upon questions of law which he desires the court or the referee to make."

Plaintiff's attorney, it would seem from his letters, did not regard the case as being finally submitted to the referee by him until he had submitted his proposed findings of fact and conclusions of law. So far as he is concerned, at least, the time began to run from that date.

The report of the referee was, therefore, made and delivered before the expiration of 60 days from final submission, and the attempt to terminate the reference was ineffectual, and the motion to set aside the report must be denied.

---

(117 App. Div. 370)

NATIONAL BANK OF NEWPORT v. H. P. SNYDER MFG. CO.

(Supreme Court, Appellate Division, Fourth Department. January 23, 1907.)

1. BILLS AND NOTES—NATURE OF CONTRACT—ACCOMMODATION PAPER.

Under the direct provisions of Negotiable Instruments Law, Laws 1897, p. 728, c. 612, § 55, a note signed by a person as maker without receiving value therefor, for the purpose of lending his name to the payee, is accommodation paper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 259.]

2. SAME—ACTIONS—BURDEN OF PROOF—GOOD FAITH—ACCOMMODATION PAPER.

Where, in an action by an indorsee of a note made by a manufacturing corporation, it appears that the corporation was an accommodation party only, the burden of proof is on the indorsee to establish, not only the payment of value before maturity, but that he did not know or have reason to suspect that the note was accommodation paper when he accepted it.

3. CORPORATIONS—ACCOMMODATION PAPER.

A manufacturing corporation has no power to bind itself as an accommodation party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1831.]

Appeal from Trial Term, Herkimer County.

Action by the National Bank of Newport against the H. P. Snyder Manufacturing Company. From a judgment for plaintiff, and an order denying a new trial, the defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

M. G. Bronner, for appellant.
Robert Forsyth Little, for respondent.

SPRING, J. The action is upon a promissory note for $5,000, purporting to be executed by the defendant, a domestic corporation, with its place of business in the city of Little Falls, in the county of Herkimer. The note was made payable to the order of the Newport Knitting Company, another manufacturing corporation located at Newport, in said county, and, as it is claimed, negotiated by it for its benefit with the plaintiff. Upon a prior appeal (107 App. Div. 95, 94 N. Y. Supp. 982) a new trial was granted for errors in the exclusion of evidence tendered on behalf of the defendant.

In 1901 the bank held four notes, of $5,000 each, which it had received from the Newport Knitting Company. One of these notes was executed by Homer P. Snyder, who was a director in both of these corporations, and in fact three men, Sheard, Snyder, and Senior, composed the majority of the directorate of each company. The bank examiner had censured the plaintiff for continuing these four notes which it held, and its cashier, in a conversation with Mr. Senior, requested that the note executed by Homer P. Snyder either be paid at maturity or that commercial paper be substituted in its place. Mr. Senior thereupon promised to take up the note and present in its place the note of the defendant, which the plaintiff agreed to accept, and this was done. The note was carried along by renewals until July, 1903, when the one in suit was given, which is the last of the series. The evidence shows without dispute that the defendant received nothing whatever for this note, or any of the series. It became maker to accommodate the payee, the Newport Knitting Company, and the notes were renewed along from time to time at the instance of the payee, and the discount was always paid by it. The defendant, therefore, was entitled to the ruling that the note was accommodation paper within the terms of Negotiable Instruments Law, Laws 1897, p. 728, c. 612, § 55. The court permitted the jury to determine whether the note was for the accommodation of the knitting company against the protest and exception of the defendant, and this submission to the jury constituted reversible error.

We start, therefore, with the fact established that the note is accommodation paper, and the other element necessary to a recovery is to prove that the plaintiff was not aware of the vice in the note. If the story of Mr. Senior is correct, the plaintiff knew that when the first of the series of the notes, of which the note in suit was one, was accepted by it, the real party in interest was still the Newport Knitting Company; and this was corroborated to some extent by the fact that

the payee continued to pay the discount on this list of notes the same as upon the one for which it was a substitute and the others composing the $20,000 liability. Mr. Wooster, the cashier of the plaintiff, in his narration of the conversation with Mr. Senior, testified to facts indicating that the plaintiff believed that the note was ordinary commercial paper owned by the knitting company, which is now insolvent, and this controversy made the vital question of fact the good faith of the plaintiff in accepting the note. In submitting this question to the jury, the court said that the burden was upon the defendant to prove that the plaintiff knew or had reason to suspect that the note was accommodation paper when it accepted it; in other words, that the burden was upon the defendant to prove this fact to the satisfaction of the jury. That is not the rule where the note is accommodation paper. Smith v. Weston, 159 N. Y. 194–198 et seq., 54 N. E. 38; Vosburgh v. Defendorf, 119 N. Y. 357–364, 23 N. E. 801, 16 Am. St. Rep. 836; Citizens' Bank of Buffalo v. Rung Furniture Company, 76 App. Div. 471, 78 N. Y. Supp. 604. It was for the plaintiff to establish the bona fides of the transaction.

It is claimed that the interrelations of the stockholders at least permit the inference that the note was not accommodation paper. As noted above, the majority of the board of directors was composed of the same individuals in each corporation, and the major part of the stock of the two companies was owned by the same persons. So far as the evidence shows, however, there does not seem to have been any interconnection of business between the two companies, indicating that each was liable for the obligations of the other. The defendant sold machinery to the knitting company, which was paid for. That is the only transaction referred to. The companies must be treated as distinct entities, whatever may be the composition of their stockholders or directorship, unless there is something to create the inference that they were in fact one body in dealing with the plaintiff, and there was no proof of any such relationship.

It is to be borne in mind that the defendant in this case is a manufacturing corporation. When an individual signs a note, either as maker or indorser, for the benefit of another, and allows it to be put in circulation, he is liable to a holder for value, although such holder knew him to be an accommodation party. Negotiable Instruments Law, § 55; National Bank of the City of N. Y. v. Toplitz, 81 App. Div. 593, 81 N. Y. Supp. 422, affirmed 178 N. Y. 464, 71 N. E. 1. But a manufacturing corporation has no power to bind itself as an accommodation party. Central Bank v. Empire Stone Dressing Co., 26 Barb. 23; Bank of Genesee v. Patchin Bank, 13 N. Y. 309; National Park Bank v. German Am. N. W. & S. Co., 116 N. Y. 281, 22 N. E. 567, 5 L. R. A. 673. So that the rule adverted to does not obtain in this case, and the plaintiff must show both that it was a holder for value, and also that it did not know the accommodation character of the defendant's signature.

The other questions discussed in the brief of the appellant's counsel we do not deem it essential to refer to. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur; WILLIAMS, J., in result only.