MAX HEUERTEMATTE et al., Appellants, *v.* FRANCIS MORRIS, Respondent.

A *bona fide* holder for value of a bill of exchange before acceptance is not required to pay an additional consideration to the drawee for his acceptance, in order to enforce it against him.

The bill itself implies a representation by the drawer that the drawee is in funds to meet it, and the contract of the former is that the latter will accept and pay according to the terms of the bill; the subsequent acceptance constitutes an admission of the truth of the representation, which the drawee and acceptor is not thereafter allowed to retract.

R. who resided at Rivas in the State of Nicaragua, having collected a claim as agent for plaintiffs who resided at Panama, sent to them a draft for the amount, less cost of collection and exchange, drawn by him on defendant at New York ; this draft was received and accepted by plaintiffs in lieu of the moneys collected, and was remitted to New York; it was accepted by defendant, but when presented for payment it was refused. In an action upon the draft, *held*, that plaintiffs were *bona fide* holders for value ; that the funds collected by R. remained their property, until by their acceptance of the draft they consented to and approved of that mode of transmission, and simultaneously with such acceptance the title to the funds passed to R. ; that until such acceptance the conventional relation of debtor and creditor did not exist between R. and plaintiffs, and then those relations were governed by the liabilities existing by force of the draft alone ; and that defendant was precluded by his acceptance from showing that it was without consideration and was induced by fraud on the part of the drawer

(Argued December 7, 1885 ; decided December 22, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made October 27, 1882, which reversed a judgment in favor of plaintiff, entered upon a verdict directed by the court. (Reported below, 28 Hun, 77.)

This action was brought upon defendant's acceptance of a bill of exchange drawn upon him at ninety days by Ran Runnels of Rivas, in the State of Nicaragua, payable to the order of Hourquet & Poylo and by them indorsed before acceptance to plaintiffs.

Defendant offered to show that the acceptance was made without consideration and was induced by fraudulent representations on the part of the drawer; this was objected to and excluded.

The material facts are stated in the opinion.

*F. R. Coudert* for appellants. An acceptance estops the acceptor from denying consideration or alleging fraud of drawer as against a *bona fide* holder. (*Harger* v. *Worrall*, 69 N. Y. 371 ; *Comstock* v. *Hier*, 73 id. 273 ; *Nickerson* v. *Ruger*, 76 id. 276 ; *First Nat. Bk.* v. *Green*, 43 id. 301.) Want of consideration between the drawer and acceptor is no defense against one who has given consideration for the bill, if that

fact be not known to the holder before he gives value for it. (*U. S.* v. *Bk. of Metropolis*, 15 Pet. [U. S.] 377; *Corbett* v. *Clark*, 45 Wis. 403; *Wells* v. *Brigham*, 6 Cush. 6.) As against a *bona fide* holder, the acceptor must pay although the bill prove to be forged. (*Goddard* v. *Merchants' Bk.*, 4 Comst. 147; *Lather* v. *Simpson*, L. R., 11 Eq. 398; *Smith* v. *Braine*, 16 Ad. & Ell. [N. S.] 498; *Fitch* v. *Jones*, 5 Ell. & Bl. 238; *Anderson* v. *Warne*, 71 Ill. 20; *Roberts* v. *Lane*, 64 Mo. 108.) The acceptance is equally binding and subject to the same application of the rule of estoppel, whether given prior or subsequent to parting with value. (*Commercial Bk.* v. *Norton*, 1 Hill, 501; *Philbrick* v. *Dallett*, 2 J. & S. 370; *Nat'l Bk.* v. *Schuyler*, 7 id. 440; *Theidermann* v. *Goldschmidt*, 1 De Gex, F. & J. 4; *Robinson* v. *Reynolds*, 2 Q. B. 211; *Hoffman* v. *Bk. of Milwaukee*, 12 Wall. 181; *Voorhis* v. *Olmstead*, 66 N. Y. 113; *Nat'l Bk.* v. *Nat'l Bk. Comm.*, 50 id. 585.)

*C. E. Coddington* for respondent. Where a bill is void in its creation, or has been unduly obtained, or wrongfully diverted from its purpose and fraudulently negotiated, the party suing on it is bound to show himself a *bona fide* possessor. The affirmative is with the plaintiff, in an action upon such a bill, to prove a clear legal title, valid as against the parties to the instrument. (*Comstock* v. *Hier*, 73 N. Y. 273; *Nickerson* v. *Ruger*, 76 id. 279.) One who receives a bill or note before due, and without notice and knowledge of any fraud in its inception or transfer, but for a precedent debt, and without parting with value or any valuable consideration, does not acquire a valid title to the note or bill, but takes it subject to all its infirmities, precisely as if he had taken it after dishonor, or with knowledge of all the circumstances affecting its validity. (*Moore* v. *Ryder*, 65 N. Y. 441; *Lawrence* v. *Clark*, 36 id. 128 ) The extinction of a legal demand, in its original form, is to be proved affirmatively; and the question whether a party is a holder for value of the new security, so as to displace, in his favor, any right or equity against the party to whom it was given, depends

upon the fact being established of an intended and actual extinguishment. (*N. Y. Exchange Co.* v. *De Wolf*, 3 Bosw. 86.) Plaintiffs were bound to prove an express agreement between them and Ran Runnels or Hourquet & Poylo, that the taking of the bill was an absolute payment and discharge of plaintiff's claim against them for the money they had collected. (*Farrington* v. *Frankfort Bk.*, 31 Barb. 183.) The receipt, alleged to have been given by plaintiffs to Ran Runnels, does not answer this requirement. (*Olcott* v. *Rathbone*, 5 Wend. 493; *Bradford* v. *Fox*, 38 N. Y. 289 ; *Phœnix Ins. Co.* v. *Church*, 81 id. 221; *Molden* v. *Whitlock*, 1 Cow. 290 ; *Lawrence* v. *Clark*, 36 N. Y. 131.) Defendant is not estopped by an acceptance, upon which plaintiffs did not rely when they took the bill, from showing as against them that the acceptance is void for fraud. (*Farmers & Mechanics' Bk.* v. *Empire Stone Dressing Co.*, 5 Bosw. 290.) The delivery of a check does not operate as payment of a debt, and a receipt given upon delivery of the check, acknowledging the receipt of money, adds nothing to the effect of such delivery. (*Bradford* v. *Fox*, 38 N. Y. 290; *Olcott* v. *Rathbone*, 5 Wend. 493; *Molden* v. *Whitlock*, 1 Cow. 290 ; *Lawrence* v. *Clark*, 36 N. Y. 101; *Moore* v. *Ryder*, 65 id. 441.) As plaintiffs knew that Hourquet & Poylo could not collect the claim any more directly than they could themselves, but would be compelled to employ an agent, they thus authorized the employment of an agent by Hourquet & Poylo. (*Dorchester Bk.* v. *New England Bk.*; 1 Cush. 177; Story's Agency, § 14, note 3.) Wherever any express or implied authority to appoint a sub-agent is allowed or given by the principal, a privity is created between them. (Story's Agency, §§ 201, 387.)

RUGER, Ch. J. In the discussion of this case it is unnecessary to consider particularly the agency of Hourquet & Poylo in the transaction, as they acted solely as the gratuitous agents of the plaintiffs, and had no interest in the subject of the business. It may, therefore, be treated as a transaction occurring directly between the plaintiffs and Ran Runnels, and concisely

described, was to the following effect: The plaintiffs were merchants doing business at Panama, and one Christofel was a customer and debtor of theirs, residing at San Juan del Sur, near Rivas, in the State of Nicaraugua. Christofel was desirous of discharging his obligations to the plaintiffs, but was embarrassed in doing so by the infrequency of communication between Rivas and Panama, and the want of a system of exchange enabling him to transmit funds safely and expeditiously from one place to the other. Under these circumstances the plaintiffs consulted Hourquet & Poylo, a business firm at Panama, as to the best manner of collecting the debt. The plaintiffs were informed by Hourquet & Poylo that Ran Runnels was a correspondent of theirs residing at Rivas, and that the collection could probably be made through him, and offered to transmit a draft on Christofel to Runnels, for that purpose. Thereupon the plaintiffs made their draft on Christofel at sixty days for $1,000 payable to Hourquet & Poylo, who indorsed the same to Runnels and forwarded it to him at Rivas for collection. In due time it was received by Runnels, and at its maturity was paid to him, in Columbian currency.

It becomes important now to determine the legal obligations and duties of the parties toward each other at this stage of the transaction. In the collection of the draft Runnels acted as the mere agent of the plaintiffs, and had no interest in the proceeds except, perhaps, a lien thereon for the value of his services in making the collection. He had no right or authority to use such funds for his individual purposes, and his sole duty in relation to them, was that of their transmission to his principals. The nature of the business impliedly authorized him, to make such transmission according to the usages of trade, and in the absence of such usages to do so by some other method which should, in the exercise of reasonable care and prudence, promise to accomplish the object intended. It was, therefore, open to him to transmit the funds received in specie as they were collected, or he could have purchased a bill of exchange, if opportunity served, at that place, and transmitted that; or he could remit them in any other way deemed most safe, convenient and

desirable to him, subject to the approval by his principals, of the method adopted.     It does not appear in the case but that Runnels was a merchant or banker and accustomed to sell exchange upon foreign places.     However that may be, he in fact sent to the plaintiffs, February 4, 1879, immediately upon collection, the proceeds thereof, less cost of collection and exchange, by the draft in suit.     This was his own draft upon the defendant Morris, at New York, at ninety days' sight.     Upon the receipt of this draft by the plaintiffs, it was accepted by them and remitted to New York, for presentation to, and acceptance by the drawee, and the same was accepted by him February 26, 1879.

The sole question in the case is whether the plaintiffs were *bona fide* holders for value of the draft.     We cannot doubt but that they were.     If on receiving the funds in question Runnels had purchased with them a bill of exchange or draft from a merchant, or banker, according to the usages of trade, and transmitted the same to the plaintiffs, no question could arise but that he acted as their agent in the transaction, and they would have been *bona fide* holders of such paper within all definitions of that character, and we are unable to see the difference in principle between such a case and the transaction in question. The funds collected by Runnels were, until they consented to their appropriation by him, at all times the property of the plaintiffs.     Runnels' sole duty in relation to them was that of transmission to the plaintiffs, and until that duty was legally performed he held them in a fiduciary capacity for a specified purpose.     His duty of transmission could not be performed by remitting his own obligation, payable at a future day, except by the consent and approval of the plaintiffs.     Until this consent and approval was given the funds remained the property of the plaintiffs, and any use of them by Runnels before that time would have constituted a violation of his duty to his principals, which it cannot be presumed he committed.

Doubtless the lack of adequate facilities of exchange between Riv s and Panama induced Runnels to offer, and the plaintiffs to accept, the mode of remittance adopted, and it was entirely

competent for Runnels to propose, and for the plaintiffs to ac-
cept such a solution of the inconveniences of the situation ; but
no title to the funds collected passed to Runnels, until the
acceptance of the draft by the plaintiffs.   After that and not
till then he was authorized to use those funds as his own.

By the original employment the plaintiffs contemplated no
credit to Runnels and he had no right to, and it does not appear
that he even supposed, he acquired any right to use the funds
in question for his own purposes, or that he ever did so use
them.   The conventional relation of debtor and creditor never
existed between Runnels and the plaintiffs until the acceptance
of his draft upon Morris, and then those relations were governed
by the liabilities existing by force of the draft. alone.

In accordance with the rule which precludes a court from
presuming a violation of duty by an individual, we must assume
that Runnels performed his duty, and his whole duty, to the
plaintiffs as their agent.   This required him to safely keep
their funds until he had transmitted them according to the
usage of trade, or in some other mode approved by them.   The
legal effect of the method adopted was to transfer the title to
the funds collected, to Runnels simultaneously with the accept-
ance by the plaintiffs of Runnels' draft upon Morris, and was
the precise equivalent of the payment of so much money in the
immediate purchase of a draft or bill of exchange by one person
from another.   We are, therefore, of the opinion that the plain-
tiffs were the *bona fide* holders for value of the draft in suit and
are entitled to recover thereon.

The General Term conceded that the plaintiffs were *bona
fide* holders for value of the bill before acceptance, but deny
them that character after acceptance as against the acceptor.
We think the concession is fatal to the conclusion reached by
that court.

It is said that the *Farmers & Mechanics' Bank* v. *Empire
Stone Dressing Co.* (5 Bosw. 290) is authority for the position.
It is true that some expressions of the learned judge writing in
that case may justify the citation, yet it should be consi???red

that those remarks were unnecessary to the decision of the case, and the same court have twice since then refused to follow it.

We conceive the rule there laid down finds no support in the doctrines of the text-writers or the reported cases. (*Philbrick* v. *Dallett*, 2 J. & S. 370 ; *First Nat. Bank of Portland* v. *Schuyler*, 7 id. 440 ; Parsons on Bills and Notes, 323 ; Daniels on Neg. Inst., § 534 ; Edwards on Bills [2d ed.], 410.)

If a party becomes a *bona fide* holder for value of a bill before its acceptance, it is not essential to his right to enforce it against a subsequent acceptor, that an additional consideration should proceed from him to the drawee. The bill itself implies a representation by the drawer that the drawee is already in receipt of funds to pay, and his contract is that the drawee shall accept and pay according to the terms of the draft. (Parsons on Bills, 323, 544 ; *Arpin* v. *Chapin*, Mass. Sup. Ct., Oct., 1885.) The drawee can of course upon presentment refuse to accept a bill, and in that event the only recourse of the holder is against the prior parties thereto ; but in case the drawee does accept a bill, he becomes primarily liable for its payment, not only to its indorsees but also to the drawer himself.

The delivery of a bill or check by one person to another for value implies a representation on the part of the drawer that the drawee is in funds for its payment, and the subsequent acceptance of such check or bill constitutes an admission of the truth of the representation, which the drawee is not allowed to retract. (Daniels on Neg. Inst. 534 ; Parsons on Bills, 323, 544, 545.) By such acceptance the drawee admits the truth of the representation, and having obtained a suspension of the holder's remedies against the drawer, and an extension of credit by his admission, is not afterward at liberty to controvert the fact as against a *bona fide* holder for value of the bill.

The payment to the drawer of the purchase-price furnishes a good consideration for the acceptance which he then undertakes shall be made, and its subsequent performance by the drawee is only the fulfillment of the contract which the drawer represents he is authorized by the drawee to make.

The rule that it is not competent for an acceptor to allege as a defense to an action on a bill that it was done without consideration, or for accommodation, as against a *bona fide* holder for value of such paper, flows logically from the conclusive force given to his admission of funds, and is elementary. (Daniels on Neg. Inst., §§ 532–534; Edwards on.Bills, 410 ; *Harger* v. *Worrall,* 69 N. Y. 371 ; *Com. Bk. of Lake Erie* v. *Norton,* 1 Hill, 501 ; *Robinson* v. *Reynolds,* 2 Q. B. 196, 211 ; *Hoffman* v. *Bank of Milwaukee,* 12 Wall. 181.)

Of course the cases determined upon the ground that the payee of such paper received it to apply upon an antecedent debt, or that it had been unlawfully diverted from the purpose for which it was designed, have no application to the circumstances of this case.

The judgments of the courts below should, therefore, be reversed and a new trial ordered, with costs to abide the result.

All concur.

Judgment reversed.