AMERICAN TRUST & SAVINGS BANK v. FRANK P. GLUCK.[1]

May 6, 1897.

Nos. 10,378—(37).

**Corporation—Liability on Accommodation Paper—Bill of Exchange—Bona Fide Holder.**

While a corporation has no power to make accommodation paper, yet a bona fide purchaser for value of such paper of a corporation having general power to deal in mercantile paper in the course of its business, made by an officer having apparent power to issue it, may recover thereon from the corporation.

**Same—Time of Acquiring Bill.**

The rights of a bona fide holder for value of a bill of exchange are the same whether he acquired the bill before or after its acceptance.

**Same—Sufficiency of Evidence to Show Bona Fides.**

Evidence considered, and *held,* that it sustains the finding and conclusion of the trial court to the effect that the plaintiff is a bona fide purchaser for value of the bills here in question, and entitled to recover thereon against an accommodation drawee accepting the bills after the plaintiff purchased them.

In the matter of the assignment of the Jacoby-Mickolas Company, the American Trust & Savings Bank presented a claim for allowance. From an order of the district court for Hennepin county, Jamison, J., denying a new trial, judgment having been directed for the bank, Frank P. Gluck, assignee, appealed. Affirmed.

*S. Meyers,* for appellant.

A corporation has no power to issue or accept accommodation paper. Morawetz, Priv. Corp., § 232, and note. Though a purchaser in good faith, for value, of negotiable paper, may recover against the corporation upon such paper signed by one clothed with apparent power to issue it, yet respondent in this case was not a purchaser in good faith and without notice. Farmers' v. Empire, 5 Bosw. 275; Monument v. Globe, 101 Mass. 57; Chrysler v. Renois, 43 N. Y. 209; Philbrick v. Dallett, 2 Jones & S. 370. The principal of estoppel does not apply merely because numerous other drafts of a like character were taken by respondent in like manner and afterwards paid. In order to claim

[1] Reported in 70 N. W. 1085.

an estoppel respondent must have been in a position whereby, at the time it parted with its money, it could have maintained an action against the drawee in case it refused acceptance or payment. Our statute, § 2233, which is similar to the New York statute, is as follows: "No person within this state shall be charged as an acceptor on a bill of exchange, unless his acceptance is in writing, signed by himself or his duly authorized agent." There can be no estoppel as against an express statute.

*Louis K. Hull, C. S. Jelley* and *Stephen H. Somsen,* for respondent.

Though the issue of accommodation paper is not one of the powers of a corporation, yet a bona fide purchaser for value of negotiable paper issued by a corporation may recover from the corporation if it prove to be accommodation paper. Farmers' Bank v. Butchers' Bank, 16 N. Y. 129; National Bank v. Young, 41 N. J. Eq. 537; Lexington v. Butler, 14 Wall. 282; Bird v. Daggett, 97 Mass. 494; Webster v. Howe, 54 Conn. 394. Respondent's recovery depends then upon whether it is a bona fide holder. That it is, and so can recover, see Mechanics v. Livingston, 33 Barb. 458; Heuertematte v. Morris, 101 N. Y. 63; Iselin v. Chemical, 16 N. Y. Misc. 437; First National v. Schuyler, 7 Jones & S. 440; Hoffman v. Bank, 12 Wall. 181. "Want of consideration, as between drawer and drawee, will not prevent recovery against the drawee by one who has become a bona fide holder of the bill before acceptance." Fort v. Carter, 152 Mass. 34. But the doctrine of estoppel also applies in this case. The very fact that drafts of this character were presented and discounted so frequently and always promptly paid, would lead respondent to believe everything was as it should be. The words "pay as advised," being contained in each draft so discounted, makes the case for estoppel even stronger. Respondent need not have been in a position, at the time it parted with its money, to maintain an action against the drawee on the drafts. When they were presented the drawee had the option of accepting them or of refusing to do so, and by accepting them it completed a contract between itself and the holder, the consideration flowing to the drawee from the holder being the forbearance to pursue the drawee and the extension of credit by such acceptance. Heuertematte v. Morris, supra.

START, C. J. The defendant herein, Frank P. Gluck, is the assignee in insolvency of the Jacoby-Mickolas Company, a corporation organized under the laws of this state, and engaged, prior to its assignment, in the business of dealing in whiskies and liquors at the city of Minneapolis. The plaintiff, the American Trust & Savings Bank, during the times hereinafter mentioned was, and is, a banking corporation, doing business as such at the city of Chicago. The plaintiff presented to the defendant for allowance, as such assignee, a promissory note for $800 made by the Jacoby-Mickolas Company, and two bills of exchange accepted by it for the sums of $1,218.34 and $551.88, respectively, which were disallowed by the assignee, and the plaintiff appealed therefrom to the district court of the county of Hennepin. Upon the hearing of the appeal in the district court the entire claim was allowed, and judgment directed for the plaintiff accordingly. The assignee appeals from an order denying his motion for a new trial. No question is made in this court to the allowance of the promissory note, but the defendant assigns as error the allowance of the amount of the two drafts.

The material facts as to the two drafts are these: George G. Jacoby was president and treasurer, and J. A. Zerbe secretary, of the Jacoby-Mickolas Company, and each of them, as such officer, was at all times authorized by the corporation to accept for it drafts drawn on it, and make for it promissory notes, in the due course of its business. On September 13th, 1895, J. A. Brecher made the first draft here in controversy, which was in these words:

"$1,218.34.                                    Chicago, Sept. 13, 1895.

At five days' sight pay to the order of the American Trust and Savings Bank twelve hundred and eighteen and 34-100 dollars, with exchange, as advised. Value received, and charge to account of
                                              "J. A. Brecher.
"To Jacoby-Mickolas Company, Minneapolis, Minn."

This draft was discounted by the plaintiff on the same day, in the usual course of business. It paid the full face amount therefor, less exchange. The draft was on September 16, 1895, accepted by the Jacoby-Mickolas Company, by Jacoby, as its treasurer. On September 14, 1895, Brecher made the second draft in controversy, which was for $551.88, and was payable at sight, and in all other respects like

the first draft, except as to dates and amounts. It was in like manner discounted by the plaintiff and accepted by the drawee. These drafts were a part of a large number of drafts, some hundreds in all, for various sums and different dates, drawn by Brecher on the Jacoby-Mickolas Company, commencing in 1894, all of which were accepted by the corporation, by either its president and treasurer, Jacoby, or its secretary, Zerbe. Payment of none of the series was ever denied, but all were paid by the corporation prior to its assignment, which was made after the acceptance of the two drafts here in question, and before payment.

All of the several drafts, including the two here in question, were exactly the same in form, signatures, and wording, except as to dates and amounts. All of the drafts so drawn by Brecher were in fact accepted by the corporation for his accommodation, no funds having been provided for their payment in advance of acceptance. But in all cases, except the two last, Brecher sent to the corporation, after the acceptance and before the maturity of the drafts, his checks, which were paid, for the purpose of providing funds for the payment of the drafts. Brecher died after the making of the two last drafts, and before their acceptance. He was during the time of the transactions here stated a resident of Chicago, and a customer of the plaintiff bank, and was accustomed to draw and negotiate these drafts once or twice a week, and sometimes once or twice a day. He represented a whole sale liquor firm of whom the Jacoby-Mickolas Company bought their goods.

The trial court found, in effect, that the plaintiff was a bona fide purchaser of the drafts for value, without notice, having discounted them in the due and regular course of business, without any reason to believe that any of them were not duly made and accepted. The defendant assignee challenges the correctness of this finding and conclusion. While a corporation has no power to issue accommodation paper, yet a purchaser in good faith, before maturity and for value, of such paper of a corporation, having general power to deal in mercantile paper in the course of its business, made by an officer having apparent power to issue it, may recover thereon from the corporation. Auerbach v. Le Sueur, 28 Minn. 291, 9 N. W. 799; 1 Daniel, Neg. Inst. § 386; 1 Am. & Eng. Enc. Law (2d Ed.) 349. The only question then, in this case, is

whether the facts show that the plaintiff was not a bona fide purchaser for value of these drafts.

1. The defendant insists that the plaintiff was not such bona fide purchaser because the words "as advised," in the drafts, was notice to the plaintiff that they were not drawn upon funds in the hands of the drawee, but that the drawer was to send his checks to cover the amount of the drafts. There is nothing in these words to excite suspicion, or put a prudent business man upon inquiry. But, if it were otherwise, the fact that hundreds of other drafts, with the words "as advised" in each, had been all promptly accepted and paid by the corporation at maturity, to the knowledge of the plaintiff, would necessarily dispel any possible suspicion that the words had a sinister meaning, and that there was anything wrong with the paper.

2. Again, the defendant claims that the fact of the frequency with which drafts were drawn by Brecher, "a mere salesman and customer of the plaintiff," and discounted by it, was sufficient to arouse its suspicion, and lead it to an inquiry as to the real character of the transaction as between the drawer and drawee. Such was not the natural tendency of the fact relied on to show notice to the plaintiff, but, on the contrary, it directly tends to establish the good faith of the plaintiff. The repetition by the drawee of the act of prompt acceptance and payment of a hundred or more of other drafts precisely like the ones here in question, and under like circumstances, would justify the plaintiff in believing, if it had any previous suspicions in the premises, that the corporation drawee and its officers were acting honestly, and conducting its business within the limits of its and their powers. Columbia v. National, 52 Minn. 224, 53 N. W. 1061.

3. Lastly, the defendant claims that as to the acceptor, the Jacoby-Mickolas Company, the plaintiff is not a holder for value, for the reason the drafts were discounted by the plaintiff before they were accepted, and therefore it parted with nothing of value on the credit of the acceptance. The only case cited which supports this proposition is that of Farmers v. Empire, 5 Bosw. 275. The court of appeals, however, in the case of Heuertematte v. Morris, 101 N. Y. 63, 4 N. E. 1, held just the reverse, and in referring to the case cited the court said:

"We conceive the rule there laid down finds no support in the doctrine of the text writers or the reported cases." "If a party becomes a

bona fide holder for value of a bill before its acceptance, it is not essen-
tial to his right to enforce it against a subsequent accepter that an
additional consideration should proceed from him to the drawee."

It is suggested by counsel for defendant that the rule announced in
the case last cited has no application to a case like the one at bar,
where the acceptor is a corporation. This claim is well answered by
the case of Credit Co. v. Howe, 54 Conn. 357, 382, 8 Atl. 472, in which
the court said:

"The precise question now is whether a person who receives an ac-
commodation bill before acceptance, no new consideration moving
from him to the drawee, can avail himself of a subsequent acceptance.
In Farmers v. Empire Stone, 5 Bosw. 275, it was held that he could
not. In Heuertematte v. Morris, 101 N. Y. 63, 4 N. E. 1, it was held
that he could. The latter case was put upon the broad ground that
the former was not law, and not upon any supposed distinction be-
tween corporations and individuals. The good faith of the holder
must not be confounded with the validity of the acceptance. Al-
though the latter may, and often does, depend upon the former, yet
they are distinct questions for most purposes. An accommodation
acceptance being valid, and the plaintiff otherwise a holder in good
faith, the mere fact that he received the bill before acceptance does not
make him a mala fide holder."

It is settled upon principle and authority that one who purchases a
bill of exchange before its acceptance, in the ordinary course of busi-
ness, in good faith and for value, is a bona fide holder for value, as
against the acceptor. The rights of the holder of a bill are the same
whether they were acquired in anticipation of or subsequent to its ac-
ceptance. Arpin v. Owens, 140 Mass. 144, 3 N. E. 25; Fort v. Carter,
152 Mass. 34, 25 N. E. 27; Hoffman v. Bank, 12 Wall. 181; Heuerte-
matte v. Morris, 101 N. Y. 63, 4 N. E. 1; Webster v. Howe, 54 Conn.
394, 8 Atl. 482.

The evidence in this case fully sustains the finding and conclusion
of the trial court to the effect that the plaintiff was a bona fide pur-
chaser of the drafts, for value, before maturity, and entitled, as such,
to recover the amount thereof from the estate of the Jacoby-Mickolas
Company.

Order affirmed.