SLUSH *et al. v.* PATTERSON

(In Banc. Jan. 13, 1947. Suggestion of Error Overruled Feb. 24, 1947.)

[28 So. (2d) 738. No. 36167.]

114

[29 So. (2d) 311.

Rawls & Hathorn, of Columbia, **Hathorn & Hathorn** and Stevens & Calhoun, all of Hattiesburg, and **Jones & Ray,** of Jackson, for appellants.

Hall & Hall, Bernard Callender and Phillip Singley, all of Columbia, for appellee.

118

Hall & Hall, Bernard Callender and Phillip Singley, all of Columbia, for appellee, on suggestion of error.

Argued orally by **F. C. Hathorn, Sr.**, for appellants, and by **Lee D. Hall**, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the Court.

Appellants, the wife and daughter, respectively, of Matthew Slush, deceased, were sued under Section 1314, Mississippi Code of 1942, as the sole heirs at law of the decedent, and were joined with the State of Mississippi codefendant under Chap. 309 of the Laws of 1940, the prayer of the original bill seeking to quiet and confirm the title in appellee, as complainant, to the N½ of the SW¼ and SW¼ of SW¼ of Section 6, Township 1 North, Range 17 West in Marion County. Appellee's title is predicated upon a tax sale to the State on June 1, 1931, for the 1930 taxes, and a forfeited tax land patent from the State to him under date of March 23, 1943, involving the foregoing with other lands at the same sale.

At the conclusion of the trial, the chancery court rendered a final decree as prayed by appellee, quieting and

confirming title in him. Mrs. Slush and Mrs. Stubbs appealed.

The errors assigned here are: (1) The trial court erred in holding that the title to this land passed to the State for the reason that the tax sale was void on its face on account of the total failure of the tax collector to obey the statute governing tax sales; (2) the trial court erred in confirming the tax title of appellee against appellants and canceling their true, legal and equitable title thereto because so doing deprived appellants of the land without due process of law contrary to the Fifth and Fourteenth Amendments of the Constitution of the United States and Section Fourteen of the Constitution of Mississippi; (3) the trial court erred in overruling the demurrer of appellants to the original bill; and (4) the trial court erred in not dismissing appellee's original bill.

At the time of his death in 1929, Matthew Slush owned four separate tracts of land in Marion County aggregating 500 acres assessed to him as uncultivable land, and among them was the land forming the subject matter of this litigation. The four tracts are described as follows:

(1) N½ of SW¼ of NE¼ and SE¼ of NE¼ of Section 6, Township 1 North, Range 17 West, and contains 60 acres.

(2) N½ of SW¼ and SW¼ of SW¼ of Section 6, Township 1 North, Range 17 West, and contains 120 acres.

(3) SW¼ of NW¼ of Section 18 in Township 1 North, Range 17 West, and W½ of NE¼ and SE¼ of NE¼ of Section 13 in Township 1 North, Range 18 West, and contains 160 acres.

(4) SE¼ of Section 25, Township 2 North, Range 18 West, and contains 160 acres.

The assessment roll reveals the land here involved as assessed on Land Page 61, Roll Line 21 in connection with the N½ SW¼ NE¼ & SE¼ NE¼ all in Section 6, Township 1, Range 17, containing 180 acres, with a valuation of $900. These two tracts are numbered 1 and 2 above. The other lands assessed on the 1930 land roll to Matthew

Slush consisted of SW¼ of the SW¼, Section 18, Township 1, Range 17, 40 acres, with an assessed value of $200.-00, appearing on Land Page 64, and Roll Line 24, and this tract forms part of number 3 above; and the W½ NE¼ and SE¼ NE¼, Section 13, Township 1, Range 18, containing 120 acres with a valuation of $600, also forming part of tract number 3 and assessed on Land Page 104, Roll Line 31; and also tract number 4 above, the SE¼ of Section 25, Township 2, Range 18, 160 acres, with an assessed valuation of $800, appearing at Land Page 109, Roll Line 9. Of the foregoing lands the SE¼ of the NE¼, Section 6, Township 1, Range 17, was sold to the State in 1929 so that when the four tracts above were sold to the State on June 1, 1931, the aggregate assessed value was $2,300. It will be noted that these four tracts of land were widely separated in three different sections, and one tract in a different township from the others.

Appellant contends that the tax collector sold them as a unit contrary to Section 3249 of the Code of 1930, providing that: ". . . If the taxes remain unpaid, the collector shall proceed to sell the land, or so much and such parts of the land, of each delinquent taxpayer, as will pay the amount of taxes due by him, and all costs and charges, to the highest bidder for cash. He shall first offer forty acres, and if the first parcel so offered do not produce the amount due, then he shall offer another similar subdivision and so on until the requisite amount be produced, or until all the land constituting one tract and assessed as the property of the same owner be offered. Upon offering the land of any relinquent taxpayer, constituting one tract, if no person will bid for it the whole amount of taxes and all costs, the collector shall strike it off to the state."

These four tracts of land, while separated and not contiguous, were all located and consequently assessed in the Hub and Globe Academy Road and School District. The tax collector in anticipation of the payment of the taxes by the property owner, and as a means of facilitating the

rapid collection of taxes, filed in a tax receipt, in the book of blank tax receipts, in the name of Matthew Slush for 1930 taxes, said receipt being Numbered 7541. On this receipt were listed and valued all of the four separate tracts and in addition thereto another 14 acres in fractional Section 31 not here involved. The aggegate taxes were computed on the total value of all the land listed ($2,370), amounting to $134.29. The taxes were not paid, however, and the original unsigned receipt is still in the tax receipt book. As stated, supra, part of Tract No. 1, being the SE¼ of the NE¼ of Sec. 6, was sold to the State in 1929, and with the exception of the two tracts mentioned in Sections 31 and 6, respectively, the remainder of the land was sold to the State in 1931.

The land not having been sold on the date fixed by law, at its May meeting, 1931, the board of supervisors, by an appropriate order, designated June 1, 1931, as the date to sell all of the lands in Marion County on which the taxes had not been paid for 1930, and in the order described the involved lands of Matthew Slush as follows:

| Name of Owner | Description of Land | Sec. | Twp. | Rge. |
|---|---|---|---|---|
| Matthew Slush | N½SW¼NE¼&N½SW¼&SW¼SW¼ | 6 | 1 | 17 |
| | SW¼NW¼ | 18 | 1 | 17 |
| | W½NE¼&SE¼NE¼ | 13 | 1 | 18 |
| | SE¼ | 25 | 2 | 18 |

The notice of the tax collector's sale of land groups these four tracts under the name of Matthew Slush and puts the values, the county tax, the state tax and the damages all on one line opposite the bottom line on which is listed tract number 4, with a total tax and damages of $138.95, calculated integrally on all four several tracts as if they were a single entity. In other words, the land in Section 6 was not separately valued, nor was the state tax separately stated as to it, nor was the county tax separately stated as to it, nor were the damages separately stated as to it, nor was a total separately stated as to it.

The same condition is true in the advertisement as to the lands in Section 18, the lands in Section 13, and the lands in Section 25, only the totals of all four tracts appearing, as stated, in the advertisement. Significantly, there were also in the same advertisement 35 acres in tract S.H., Section 15, Township 1, Range 14, assessed to Matthew Slush and advertised for sale, but as to it, the valuation is separately stated, the state tax is separately stated, and the county tax is separately stated, as are the damages and the total with reference to it is also separately stated. All of this is potent in determining whether the land in the suit and the associated lands were all sold each in separate sale, or all lumped together and sold in a single sale, en masse.

The list of the lands to the State shows the same description and the same situation with reference to the state tax, county tax and the damages, and the total of all three items being calculated on the aggregate of all of the tracts as a unit, instead of breaking them down into separate items, as separate tax, damages and totals on each parcel. There was no oral proof as to mode and procedure at the actual sale, and the issue here to be determined must depend upon the foregoing documents for its solution. Section 3256, Code of 1930, was the then statute applicable to the method of making and the effect of such lists, and in its pertinent parts is as follows: ''The tax collector shall . . . transmit to the clerk of the chancery court of the county separate certified lists of the lands struck off by him to the state and that sold to individuals, specifying to whom assessed, the day of sale, the amount of taxes for which the sale was made and each item of cost incident thereto, and, where sold to individuals, the name of the purchaser, to be separately recorded by the clerk in books kept by him for that purpose. The said lists shall vest in the state or the individual purchasers thereof a perfect title to the land sold for taxes, but without the right of possession and subject to the right of redemption; but a failure to transmit or

record a list, or a defective list shall not affect or render the title void.'' Section 3264, Code 1930, provides that certain classes of persons therein listed ''May redeem the same, or any part of it, where it is separable by legal subdivisions of not less than forty acres, or any undivided interest in it, at any time within two years after the day of sale, by paying to the chancery clerk, regardless of the amount of the purchaser's bid at the tax sale, the amount of all taxes for which the land was sold, with all costs incident to the sale, and twenty-five per centum on the amount of taxes for which it was sold and all costs, and all taxes and costs that have accrued on the land since the sale, and, in the case of land sold to individuals, an additional five per centum on the whole amount of the redemption money which said five per centum shall be paid to the purchaser; . . .''

In the opinion on Suggestion of Error in State et al. v. Wilkinson et al., 197 Miss. 628, 629, 20 So. (2d) 193, 836, we said that ''When Secs. 3256 and 3264, Code 1930, Secs. 9935 and 9948, Code 1942, are read together, as well as with other sections in pari materia, it is clear enough that it is the duty of the tax collector, in making out his list, to be filed with the chancery clerk, of lands sold to the State, to enter for each separate assessment (1) the date when sold, (2) to whom assessed, (3) the description, (4) the number of acres, and (5) the valuation, after which he shall extend on the list opposite each separate assessment the statement (a) of the various items of the original or basic ad valorem taxes including district levies, (b) of the damages, (c) of the fees, and (d) of the total taxes and costs. This is necessary for the process of redemption and especially so when a person in interest redeems only a part of a sale as he may do.'' We have repeatedly held that the sale as a unit in the aggregate of two or more separate tracts of land is void under the statute, even though all be owned and assessed to one individual or a single owner. Morris v. Myer, 87 Miss. 701, 40 So. 231; Speed v. McKnight, 76 Miss. 723,

25 So. 872; Hewes v. Seal, 80 Miss. 437, 32 So. 55. As stated, supra, it is to be noted that as to each separate tract of land in the notice of sale and in the list there was no special separate calculation of the state tax, the county tax and the damages as to the several tracts, but only a total calculation based upon the sum of all of the values of all of the parcels together, together with a total of all the taxes and all of the damages calculated on the unification of these several parcels, although each tract was separately described each time.

Appellee contends that the sale to the State was not void for the reason that the four tracts were all uncultivable land assessed at the same uniform value of $5 per acre, and in the same school district, and that the tax collector violated no law in grouping them on one tax receipt. Furthermore that such grouping on the tax receipt did not prevent the tax collector from making a quick and easy calculation on the amount of taxes due on each separate tract; and that no law was violated by the board of supervisors in grouping the four tracts in the order, fixing the date for the sale of land for delinquent taxes; and he points out that it was not necessary for the board to describe the land at all, in the order, citing Bass v. Batson, 171 Miss. 273, 157 So. 530. Appellee further argues that no law was violated by the tax collector in grouping the four tracts in his advertisement of the tax sale, and that the number, 7541, was not a sale but a tax receipt number. And also that the grouping of the four tracts on the tax receipt, in the notice of sale, and in the tax collector's list of the sale, is no evidence that the law was violated in the tax sale, under Lewis v. Griffin, 103 Miss. 578, 60 So. 651. There, we said: ''It is claimed that the list of lands sold to individuals filed by the tax collector with the clerk of the chancery court shows that the two tracts of land which were separately assessed were grouped together, and that the two separately assessed parcels of land were embodied in the same deed to the purchaser at the sale for delinquent taxes. This,

it is said, overcomes the presumption the statute gives to tax collector's deeds, or, rather, that the list of lands sold to individuals, together with the collector's deed to the purchaser, raises the presumption that the two parcels of land were not sold separately. The deed and list of lands do not raise any presumption that the law was not complied with, since no statute requires that separate deeds must be made to each tract of land sold.'' In that case, the procedure was under Section 3816 of the Code of 1892, requiring the tax collector to execute a deed to individual purchasers; and also to file a list of lands sold to the State and individuals under Sections 3815 and 3818. The present law does not require the execution of such deed, and the opinion there gets down to this pronouncement: ''The only requirement of the law is that each tract of land separately assessed shall be offered and sold separately. The tax collector's deed is prima facie evidence that he complied with the law.'' The statute then in force provided: ''A conveyance made by the Tax Collector to an individual purchaser of land at a sale for taxes, and the list of lands sold to the state at such sale, shall be prima facie evidence that the assessment and sale of the land were legal and valid.'' Section 1578, Miss. Code of 1930, Section 1739, Code of 1942.

Appellants' point, that the tax collector's list in this case was not actually signed by him, thereby preventing a prima facie presumption to aid the appellee here, is disposed of adversely to appellant by Section 3256, Miss. Code 1930, Section 9936, Code 1942, as interpreted by Clanton v. Callender, 198 Miss. 614, 22 So. (2d) 487; Lear v. Hendrix, 186 Miss. 289, 187 So. 746; and Roebuck v. Bailey et al., 176 Miss. 234, 166 So. 358. The effect of the above authorities is that it is not the certificate but the list which conveys title to the State, and in Jones v. Seward, 196 Miss. 446, 16 So. (2d) 619, 621, in speaking of the report of sale, we said: '' . . . It will be presumed, in the absence of proof to the contrary, that this

official performed his duties in the manner required by the law.''

However, in Leavenworth v. Claughton, 197 Miss. 606, 19 So. (2d) 815, 20 So. (2d) 821; we said: ''. . . The tax collector sold the lands to the State, but in making the sale he sold the lands in Sec. 6 by one sale, No. 217, and the land in Sec. 7 by another, No. 218, as shown on the face of his certified list of sales to the State; so that he made two sales of one contiguous tract owned by the same owner, and the sales having been made under Sec. 3249, Code 1930, as it then stood, they were invalid.'' It was argued in that case that: ''. . . Inasmuch as the law required the tax collector to make one sale of the one tract, it must be presumed that he acted accordingly, and Jones v. Seward, [196 Miss. 446,] 16 So. (2d) 619, is cited. The presumption raised by the general recital is overcome here, however, by the specific disclosure in the body of his list that he made two sales, No. 217 and No. 218.''

In the case of Love et al. v. Barron, 197 Miss. 231, 20 So. (2d) 97, 841, there are three separately numbered sales of three parcels of one contiguous tract of land. There the sale numbers 4136, 711, and 4210 were the numbers of the tax receipts made up for the separate parcels by the tax collector. Compare with the present situation where the single tax receipt was number 7541 as to this group of widely separated tracts of land. In that case we said in part: ''The property was part of a larger tract of contiguous lands which were separately assessed in three parts to Scanlon and Sammes, and the list of such sales certified to the State shows that there were three separate sales thereof to the several portions, such sales being numbered 4136, 711 and 4210 respectively. It was thus sufficiently shown that the applicable statute, Code 1930, Sec. 3249, was not followed and that the sale was void.''

With reference to Hewes v. Seal, supra, the appellee argues that the case is entirely different from the one at bar since it was there admitted that all of the widely

separated parcels of land were struck off en masse in one sale (as was contended by appellant was done in the sale here) and that the several tracts were not uniform in value. It is argued then that there is no proof here that the four separated parcels, severally listed in a single integrated tax receipt, were struck off en masse in one sale, but that, on the contrary, here the presumption is that they were not so sold. Appellee furthermore argues that in the case here all of the lands involved were all of the uniform value of $5 per acre, uncultivable, in the same school district, and section of the county. It seems to be also his position that since the value of the land was uniform and its type was uniform this would facilitate the chancery clerk's correct calculation of the amount necessary to redeem any part of it, which facility sufficiently establishes that landowners would not be prejudiced here because there was no added difficulty of redemption in the system followed by the tax collector of jointly calculating tax and damages on all four together, instead of singly on each individual parcel. The appellee, however, largely relies upon the presumption that the tax collector did his duty, and must be presumed to have sold these lands separately, as the law requires, unless it sufficiently affirmatively appears from the evidence that it did not. He is, of course, correct in that argument, but we think the facts are sufficiently disclosed by the tax records here to justify our conclusion that this presumption was overcome, and the tax collector sold the four tracts together in one sale, contrary to the statute, and the sale of all was void, including the parcel on which this suit is based.

In Leavenworth v. Claughton, supra, we said: ''The presumption raised by the general recital is overcome here, however, by the specific disclosure in the body of his list that he made two sales, No. 217 and No. 218.'' So here, we think, after very careful consideration of the matter, that while it is not against the law, as contended by appellee, for the tax collector to have done the several things enumerated in appellee's argument, to which we

have referred in that connection, supra, each and every one of them is of probative value, and the cumulative effect of all of them, in our judgment, meets the requirement of affirmative evidence of sufficient strength to overcome the presumption of regularity in the performance of his duty by the tax collector. A careful reading of each of these documents, we think, is convincing that a single sale was made of these widely separated tracts in violation of law and that the sale was void, as we said supra.

These entries, as made, are evidence of something. Can it be said that they are proof that the several tracts were sold separately? We think not. Every conclusion therefrom supports the converse as true,—that the several tracts were sold en masse, or as a unit. Is it within probabilities that the tax collector at every precedent step clear up to the actual sale dealt with these different tracts as an integrated entity group, or en masse, and then at the sale pursued a wholly different and completely different course, and sold them separately,—when the very list he filed evidences the contrary? We think that step by step the evidence progressively leads to the consistent conclusion, the tax collector ended as he started, and dealt with these lands throughout en masse, initially in the receipt and finally at the sale, and all in between. If, as appellee contends, the tracts of land were sold in the required parcels as required by the statute, in the face of all the foregoing convincing factors to the contrary, it would seem strange, indeed, that after the sale, the tax collector should resume treating the various separate tracts as a single, unified group in his list of lands sold the State. It is there disclosed clearly, we think, his integration of them into an associated whole, on which one calculation of state tax, county tax, damages, and one total thereof, was entered collectively on the entire acreage. The decree of the chancery court was erroneous, and the original bill should have been dismissed, in our opinion.

The notice of sale manifestly advertises a single sale of all tracts, as follows:

| Name and Description | | Val. | S.T. | C.T. | Dam. | Total |
|---|---|---|---|---|---|---|
| Mathew Slush  N½SW¼NE¼&N½SW¼&SW¼SW¼ | 6-1-17 | | | | | |
| SW¼NW¼ | 18-1-17 | | | | | |
| ·W½NE¼&SE¼NE¼ | 13-1-18 | | | | | |
| SE¼ | 25-2-18 | 2300 | -18.40 | 101.78 | 18.77 | 138.95 |

The list of these lands sold to the State at the tax sale discloses, as stated, a single sale, we think, and is as follows:

| Name of Owner | Division of Section | Sec. | TWP. | Rge.· | State Tax | County Tax | Damages | Total |
|---|---|---|---|---|---|---|---|---|
| 7541 Mathew Slush | N½SW¼NE¼&N½SW¼&SW¼SW¼ | 6 | 1 | 17 | | | | |
| | SW¼NW¼ | 18 | 1 | 17 | | | | |
| | W½NE¼&SE¼NE¼ | 13 | 1 | 18 | | | | |
| | SE¼ | 25 | 2 | 18 | 18.40 | 101.78 | 18.77 | 138.95 |

Appellee also argues that a sale en masse of separated tracts of land belonging to the same owner is not in violation of any law of Mississippi, but we feel that on this point all of the statutes and cases cited in the briefs refute the argument advanced to support it. It is ably argued, but we cannot agree with it.

The decree of the chancery court will be and is reversed, and decree entered here for appellant dismissing the original bill.

Reversed and decree here for appellant.

**Sydney Smith, C. J.**, did not participate in this decision.

**McGehee, J.**, delivered a dissenting opinion.

I am of the opinion that this case is the exact converse of the case of State et al. v. Wilkinson et al., 197 Miss. 629, 20 So. (2d) 193, 836, and that the decree of the trial court should therefore, be accordingly affirmed. Moreover, as held in that case, the tax collector is not required to offer land which may compromise a single tract by first

offering one forty, and then adding another, etc., when striking off the land to the State. The presumption is that he first offered it to individuals in the manner required by law, and that receiving no bid, he struck it off to the State. I see no reason why he could not have waited until he had offered all the lands which were being sold for delinquent taxes on that day, and then, by a single act, have struck off all the land to the State at one time for which he had received no bid from an individual.

In the case of State et al. v. Wilkinson et al., supra, we held that the fact that the tax collector placed opposite each parcel on his list the amount of taxes, fees and costs, giving the total, did not evidence that he had made five sales in that case instead of one. It seems, however, that the effect of the decision in the instant case is that the fact of his failure to so extend the amount of state and county taxes, fees and costs, and give the total thereof, is proof that he made only one sale instead of three.

**Roberds, J.**, concurs in this dissent.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

During the period within which this case was submitted, considered and decided one of the six members of the Court was absent because of illness. The decree of the trial court was reversed by the concurrence of three Judges, two dissenting. Appellee raises the point, and presents it in an interesting manner, that a decree or judgment is not lawfully reversed except by the concurrence of a majority of the entire Court,—that three Judges in banc are not empowered to order a reversal.

The amendment to the Constitution of 1890 made in 1916, Sec. 145A, which increased the membership of the Supreme Court to six judges, contained the provision that "any four of whom when convened shall form a quorum." The commonly recognized definition of a

quorum is that it is such a number of a body as is competent to transact business in the absence of the other members. 35 Words and Phrases, Perm. Ed., p. 672 et seq.

Acting upon this express authority, our Supreme Court during the entire course of the thirty years since the amendment has always proceeded with the business of the Court when as many as four members are present and participating, and in the same manner as if those present comprised the entire membership of the Court, and because during the thirty years there has never been a time when less than four members were present and participating, we have never within that period made a request upon the Governor to appoint a special judge for the Court. We have considered that the delay and expense incident to special appointments were a material consideration in the incorporation of the quoted language in the amendment, and we have conformed to its purpose.

In the year immediately next following the adoption of the amendment, the case of Brewer v. Browning, 115 Miss. 358, 76 So. 267, L. R. A. 1918F, 1185, Ann. Cas. 1918B, 1013, was decided with five judges participating—one Judge disqualified. The decree of the Chancery Court was reversed by the vote of three Judges, two voting for an affirmance. A case by case search through the eighty volumes of our official reports since that time will disclose that not less than a dozen cases have been disposed of under the same procedure, consistently followed for more than a quarter of a century.

It is too late now to consider that all those cases were decided without constitutional authority, because reversed by the vote of three instead of four Judges, and we hereby expressly bring forward and affirm what was said on the subject by Smith, C. J., in response to the suggestion of error in Dean v. State, 173 Miss. 254, at pages 309 and 310, 160 So. 584, 162 So. 155.

We have re-examined the present case on the merits and are satisfied with what has been done with it.

Suggestion of error overruled.