**M. J. MITCHELL, Appellant
(Defendant below),**
Wyoming Oil and Gas Conservation Com-
mission (Defendant below),

v.

**Eugene L. SIMPSON, Appellee
(Plaintiff below).**

**No. 3996.**

Supreme Court of Wyoming.

Feb. 2, 1972.

William T. Schwartz, Casper, for appel-
lant.

Burgess, Kennedy & Davis and Henry A.
Burgess, Sheridan, for appellee.

William M. Sutton and Frederic C. Reed,
Asst. Attys. Gen., Cheyenne, for amicus
curiae, Wyoming Oil & Gas Conservation
Comm.

Rocky Mountain Oil and Gas Assn. Legal
Committee and Morris G. Gray, Casper,
for amicus curiae, Rocky Mountain Oil and
Gas Assn.

Before McINTYRE, C. J., and PARK-
ER and McEWAN, JJ.

Mr. Justice PARKER delivered the opin-
ion of the court.

Following a hearing before the Wyoming
Oil and Gas Conservation Commission on
defendant-Mitchell's application for an or-
der pooling all interests for the develop-
ment and operation of an established drill-
ing unit Eugene L. Simpson filed a petition
for review as permitted by Rule 72.1, W.R.
C.P., and the Wyoming Administrative
Procedure Act (§§ 9–276.19—9–276.33, W.S.

1957 (1971 Cum.Supp.)). However, after both Mitchell and the commission had by answer urged that the petition for review was out of time, Simpson by amended complaint attacked the commission's order collaterally on jurisdictional grounds, alleging it to be illegal, unconstitutional, and taking property without compensation, and asking, inter alia, for an order requiring defendant Mitchell to pay 6¼ percent of the production of all oil and gas from the well situate on the NE¼ NE¼, Section 7, Township 50 North, Range 73 West, 6th P.M. (hereinafter in this opinion referred to merely as NE¼ NE¼). Both plaintiff and defendant Mitchell filed motions for summary judgment, and the court granted that of Simpson, holding by way of a written opinion that the commission had no jurisdiction over the plaintiff insofar as the pooling order was concerned (the point of jurisdiction being the sole question to be resolved here) since the Wyoming Statutes specifically excluded "royalty and other interests not obligated to pay any part of the costs thereof," and ordering that plaintiff have landowner's royalty from Mitchell in the amount of 6¼ percent.[1] Mitchell has appealed, urging both the propriety of the commission's order and the impermissibility of the collateral attack allowed by the district court. Simpson responds that his challenge was not an appeal or review proceeding but rather a civil action which questioned the commission's jurisdiction and sought relief against Mitchell for violation of the oil and gas lease granted him.

The circumstances which brought about this litigation were recited generally in plaintiff's March 10, 1970, amended complaint:

That plaintiff was the owner of the surface and undivided one-half interest in all of the oil and gas contained in certain lands, including the N½ NE¼, Section

7, Township 50 North, Range 73 West, 6th P.M. (hereinafter in this opinion referred to merely as N½ NE¼); that he had in 1962 executed an oil and gas lease to the Chevron Oil Company's predecessor on a form from which he deleted the pooling clause; that in 1966 Chevron assigned its interest in that lease to the defendant Mitchell on lands including the NE¼ NE¼; that on November 28, 1967, the commission after notice entered its order establishing 80-acre drilling and spacing units for the Muddy Formation, which included Section 7, Township 50 North, Range 73 West, 6th P.M.; that defendant drilled a well in the NE¼ NE¼, placing the same on production December 11, 1967; that the commission by order authorized all interests in the E½ NE¼ to be pooled in the proportion that the interest measured in surface acres bears to the surface acres in said lands; that the royalty interest of plaintiff in the NE¼ NE¼ is 6¼ percent; that plaintiff also owned the NW¼ NE¼, which tract was included in the Chevron lease; that Chevron was willing to unitize or pool the entire N½ NE¼ and commit its interest thereto.

Actually the matter had its genesis in 1967 when the Union Oil Company of California asked the commission for an order establishing 80-acre drilling and spacing units for the production of oil and associated hydrocarbons from the Muddy Formation in a field in portions of Townships 50 and 51 North, Ranges 73 and 74 West, Campbell County, Wyoming, which included Section 7, Township 50 North, Range 73 West. The commission approved the application of Union Oil on November 28, 1967, finding that one well would efficiently drain all the recoverable oil and gas from the Muddy Formation underlying an area consisting of eighty surface acres and that eighty surface acres was not smaller than the maximum area that could be efficiently

---

1. Although the trial court had indicated the Wyoming Oil and Gas Conservation Commission was not involved in the issues before it, the court had the commission remain as a party for the reason that "there was a possibility it might be a proper party, although not a necessary party."

drained by one well producing oil and gas from the Muddy Formation, and ordering:

"Each drilling and spacing unit shall consist of two (2) quarter-quarter sections comprising eighty (80) acres, more or less, located in a north-south or vertical direction or in an east-west or horizontal direction in a quarter-section. The permitted well for each drilling unit shall be located in the center of the northeast quarter (C NE¼) of a quarter-section and in the center of the southwest quarter (C SW¼) of a quarter-section, with a tolerance of two hundred feet (200') in any direction from the center location when surface conditions make such tolerance necessary."

In October 1967 Mitchell had applied to the commission for permission to drill on the NE¼ NE¼, received approval November 9, 1967, and on December 11, 1967, the well was placed on production. On November 12, 1968, the commission on its own motion reviewed its November 28, 1967, order and found that the application of Union Oil should be continued, entering order on December 10, 1968, which, inter alia, required an operator wishing to drill a well in the area to "designate the drilling and spacing unit when making an Application for Permit To Drill."

Mitchell had contacted all the owners of interests in the E½ NE¼ prior to drilling the well in the NE¼ NE¼, and all except plaintiff voluntarily signed a communitization agreement.[2] After various attempts to have plaintiff also agree failed, Mitchell applied to the commission for compulsory pooling of all interests in the E½ NE¼ (the only portion of the NE¼ for which Mitchell had drilling rights). The matter was heard March 11, 1969, and order entered April 8, 1969, to allow such pooling.

Plaintiff did not appear at the November 1967 or November 1968 hearings but protested Mitchell's application for compulsory pooling and appeared at the March 1969 hearing.

In plaintiff's affidavit in support of his motion for summary judgment in the district court he stated, among other things, that he had deleted the pooling clause in the lease which he had executed and as the mineral owner he alone could determine the direction of a drilling unit, and that the April 8, 1969, order was illegal, void, and unconstitutional as the exercise by the commission of its jurisdiction to force pool was conditioned upon a prior finding that force pooling was necessary to protect correlative rights or to prevent waste.

 Since plaintiff's resistance to the appeal and his defense of the judgment are bottomed on the single thesis that the commission lacked jurisdiction over him to issue the order, a determination of the correctness of this contention is of primary importance. It may be noted in passing that plaintiff's affidavit in support of his motion for summary judgment spelled out that theory and that the trial court in its written opinion adopted such view. The statutory language quoted by the district court and upon which it apparently premised its decision, a portion of § 30–221(g), W.S.1957, C. 1967 (as it read prior to the amendment effective February 1, 1971), is applicable only to "owner."[3] That section deals with the obligation to pay costs when there is lack of agreement as to certain drilling under pooling provisions and not with the authority of the commission to establish drilling units or provide for compulsory pooling, the subject of the present controversy. In his argument here, plaintiff points out that the commission has the

---

2. In Mitchell's affidavit in support of his motion for summary judgment, he stated that it had been necessary for him to commence drilling immediately to protect the acreage from drainage and that he had believed plaintiff would sign the communitization agreement following approval by his attorney as to form.

3. "Owner" as defined by § 30–216(e), W.S.1957, C. 1967, is "the person who has the right to drill into and produce from a pool and to appropriate the oil or gas he produces therefrom either for himself or others or for himself and others."

power to establish drilling units only to protect correlative rights or to prevent or assist in preventing waste and then maintains that for the commission to have jurisdiction over a person such person must have the capability to commit waste or affect correlative rights and if the person lacks such capability the commission has no jurisdiction. In other words, he argues that a lessor or one having only royalty interests is not subject to the commission's orders, a position which is wholly untenable. The legislature clearly provided in § 30–221(f), W.S.1957, C 1967, "In the absence of voluntary pooling, the commission, upon the application of any interested person, may enter an order pooling *all interests* in the drilling unit for the development and operation thereof." [4] (Emphasis supplied.) Furthermore, § 30–219(a), W.S.1957, C.1967, states that the commission "has jurisdiction and authority over all persons and property, public and private, necessary to effectuate the purposes and intent of this act." It follows that reasonably considering all sections of the Act the commission had the right to create a drilling unit in order to prevent or assist in the prevention of waste or to protect correlative rights and, subsequent to the establishment of a drilling unit, to order pooling of all interests, this of course including royalty interests; and in order to effectuate these powers, the commission was given jurisdiction and authority over all persons necessary for that effectuation. Neither do we see justification for plaintiff's insistence that at the April hearing on the compulsory pooling aspect he should have been allowed to present expert geologic and engineering testimony as to whether waste would be prevented and recovery of oil and gas increased by pooling the N½ NE¼. From a careful analysis of plaintiff's brief here it would seem he is really saying when the commission found that prevention of waste and protection of correlative rights would be effected by drilling units located in a North-South *or* East-West direction in a quarter section the

determination as to whether the unit would be on a North-South or East-West basis was left open for negotiation of the parties or by such laws as would determine their rights under their respective lease agreement, the commission having no authority to thereafter designate a North-South drilling unit. While we do not purport to indicate in this opinion whether the commission acted properly when in its November 1967 and December 1968 orders it made the alternative determination of the shape of the drilling units, i. e., "Each drilling and spacing unit shall consist of two (2) quarter-quarter sections comprising eighty (80) acres, more or less, located in a north-south or vertical direction or in an east-west or horizontal direction in a quarter-section," and ordered the operator wishing to drill a well in the area to designate the drilling and spacing unit when making an application for permit to drill, plaintiff has repeatedly reiterated that he never had and has now no objection to these orders. As we view it, there was no justification for his belief that the ultimate choice of the North-South or East-West direction was open for negotiation between the parties; but in any event, that circumstance had nothing to do with jurisdiction. If indeed the commission was arbitrary in its finding that the lessee had the right under its prior orders to designate the drilling unit that was a matter which Simpson could raise only by petition for review under the provisions of Rule 72.1, and not by a collateral attack.

Reversed.

GRAY, J., who was a member of the court at the time of the submission of the cause, did not participate in the decision.

McINTYRE, Chief Justice (concurring).

I concur in the result being reached only because Simpson did not take a timely appeal from the decision rendered by the Wyoming Oil and Gas Conservation Commission on April 8, 1969, following the

---

4. We fail to see how the legislature could have been clearer in its choice of words; of course, it could have been more specific, which would have carried its own danger.

hearing held by it March 11, 1969. Absent such a timely appeal, the action of the Commission became final and not subject to a subsequent collateral attack.

When the Commission, by its action in November 1967 and again in December 1968, left it in the alternative for drilling and spacing 80-acre units to be either horizontal or vertical, it only invited future trouble. Then, when it undertook to decide between the horizontal or vertical after wells had been drilled and tested, its decision almost certainly had to be arbitrary. The decision would appear to be purely a matter of deciding whether the operator or the landowner was to be favored.

There is nothing in the record to indicate that structure, reserves or any other facts favored horizontal rather than vertical units. Indeed, Simpson offered to submit expert evidence bearing on the matter, and the Commission refused to hear it. This tends to indicate an arbitrary determination.

Regardless of arbitrary action by the Commission, however, I must agree with Justice Parker that the Commission's April 8, 1969 decision became final and unimpeachable when Simpson failed to take a timely appeal under the Administrative Procedure Act.